HULL AND SMITH HORSE VANS, INC v CARRAS

Docket No. 78211. Submitted April 9, 1985, at Lansing.—Decided August 6, 1985. Leave to appeal applied for.

Hull and Smith Horse Vans, Inc. transported racehorses for James J. Carras on four separate occasions between 1978 and 1980. Carras refused to pay the transportation charges. Following Carras's refusal to pay the transportation charges, Hull and Smith kept two of the horses. Hull and Smith filed suit against Carras in Bay Circuit Court seeking to recover the costs of transporting the horses and the costs of boarding the two horses it kept for more than two years. At trial defendant argued that plaintiff did not have the required ICC certificates of public convenience and necessity to transport the horses over the routes taken, that plaintiff therefore had violated federal law, and that the violation of federal law rendered the shipping contracts void for illegality and barred plaintiff's recovery. The trial court granted plaintiff's motion for summary judgment as to defendant's illegality defense, concluding that enforcement of the Interstate Commerce Act was a federal matter and that plaintiff's violation of the act did not bar recovery. Following trial, the jury returned a verdict in favor of plaintiff. The court, Joseph R. McDonald, J., entered judgment for plaintiff in the amount of $20,797.85 with interest. Approximately six weeks later, the court ordered defendant to pay plaintiff's "actual

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Contracts § 355 et seq.
Price fixed in contract violating statute of frauds as evidence of value in action on quantum meruit. 21 ALR3d 9.

[2] Am Jur 2d, Contracts § 155 et seq.
See the annotations in the ALR3d/4th Quick Index under topic Contracts § 4.

[3] Am Jur 2d, Judges § 86 et seq.
Disqualification of judge for having decided different case against litigant. 21 ALR3d 1369.

[4] Am Jur 2d, Appeal and Error § 545 et seq.

[5] Am Jur 2d, Costs § 89 et seq.
See the annotations in the ALR3d/4th Quick Index under topic Costs Actions.

costs", including attorney fees, since defendant had refused to accept a mediation award. Defendant appealed. *Held:*

1. Although plaintiff may have been subject to civil and criminal penalties for its repeated violations of the ICC certificate requirement, the contracts remained valid and enforceable.

2. The fact that the original trial judge was disqualified due to past dealings with the defendant does not render the court's orders up to the time of disqualification void. The basis for disqualification, possible appearance of impropriety, was not so serious as to render the judge's prior rulings void.

3. The transcripts do not support defendant's claim that the assigned judge prevented defendant from presenting his case.

4. Defendant failed to offer any support for his claim that plaintiff's attorney acted improperly at trial.

5. The trial court properly awarded plaintiff actual costs, including attorney fees.

Affirmed.

1. CONTRACTS — BREACH OF CONTRACT — DAMAGES — *QUANTUM MERUIT.*

*Quantum meruit* as a theory of recovery is inapplicable where an express contract exists or where the price in the agreement is imposed by law.

2. CONTRACTS — STATUTES — ILLEGALITY.

A contract in violation of a statutory provision generally is void or illegal only if the legislative body enacting the statute evidences an intention that such contracts be considered void or illegal; thus, while the parties to a contract may be subject to a statutory penalty as the result of performing a contract, the contract itself remains in full force and effect.

3. JUDGES — DISQUALIFICATION OF JUDGES — PRIOR RULINGS.

The fact that a judge was disqualified from presiding over a case because of a possible appearance of impropriety was not a sufficient basis to render the judge's prior rulings in the case void.

4. APPEAL — PRESERVING QUESTION.

A statement of position alone, without argument or citation of authority, is insufficient to bring an issue before the Court of Appeals.

5. COSTS — COURT RULES.

There is no requirement that a trial court tax costs at the time it signs a judgment (GCR 1963, 526.10, MCR 2.625[F]).

*David F. Oeming, Jr.,* for plaintiff.

*James J. Carras,* for defendant.

Before: R. B. Burns, P.J., and Shepherd and B. A. Jasper,* JJ.

Per Curiam. Plaintiff brought this action to recover the costs of transporting defendant's racehorses on four separate occasions between 1978 and 1980. Plaintiff also sought recovery for the boarding of two of the horses in California for over two years following defendant's refusal to pay the transportation charges. The jury found for plaintiff. The trial court entered judgment for plaintiff of $20,797.85 with interest on February 28, 1984. On April 16, 1984, the court ordered defendant to pay plaintiff's "actual costs", including attorney fees, which were necessitated by defendant's refusal of the mediation award. GCR 1963, 316.7. Defendant appeals as of right. We affirm.

Each of the four transactions entailed transportation of the horses in interstate commerce. Plaintiff admitted that it lacked a "certificate of public convenience and necessity" to cover the routes for these four shipments. Defendant attempted to affirmatively defend on this ground. Since the Interstate Commerce Commission had not issued certificates to plaintiff, plaintiff had violated federal law. 49 USC 10921. According to defendant, this violation rendered the shipping contracts void for illegality and barred plaintiff's recovery. The trial court granted plaintiff's motion for summary judgment on this affirmative defense, concluding that enforcement of the Interstate Commerce Act, 49 USC 10101 *et seq.,* was a federal matter and that plaintiff's violation of the act did not bar recovery.

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

The jury's calculation of plaintiff's damages mirrors that urged by plaintiff in its complaint and at trial. In turn, plaintiff's figures for the transportation costs match those found in the standard rate schedule of the National Horse Carriage Association in force at the time of these four transactions. Plaintiff entered these figures on the bills of lading for the four shipments of defendant's horses. The rate schedule was approved by the ICC.[1] Therefore, plaintiff's recovery for the transportation costs equals what it would have received if defendant had paid in the first place. Moreover, the rates approved by the commission are the only rates allowed under federal law. *United Gas Pipe Line Co v Mobil Gas Service Corp,* 350 US 332, 338; 76 S Ct 373, 378; 100 L Ed 373, 383 (1955). Thus, plaintiff recovered the same amount to which it would have been entitled if it had possessed the applicable interstate certificates or tariffs. "A carrier's claim is, of necessity, predicated on the tariff —not an understanding with the shipper." *Thurston Motor Lines, Inc v Jordan K Rand, Ltd,* 460 US 533, 535; 103 S Ct 1343, 1344; 75 L Ed 2d 260, 262-263 (1983).

Nevertheless, at trial plaintiff wasted much effort by advancing a *quantum meruit* theory of recovery. Plaintiff claimed it was entitled to be paid a reasonable amount for the transportation of the horses and submitted extensive proof of the reasonableness of the standard rates, in light of the costs of fuel, insurance, salaries and a reasonable profit. Defendant argued that the services rendered were valueless, for various reasons we need not mention here. Plaintiff's effort was unnecessary because, as noted above, the rates ap-

---

[1] See, 49 USC 10706(b). Rate agreements approved by the commission are not actionable under the antitrust laws. *Board of Trade of City of Chicago v ICC,* 646 F2d 1187 (CA 7, 1981).

proved by the ICC are the sole rates permitted. This Court has stated on numerous occasions that "*quantum meruit* as a theory of recovery is inapplicable where an express contract exists". *Hayman Co v Brady Mechanical, Inc,* 139 Mich App 185, 191; 362 Mich App 243 (1984); *LeZontier v Shock,* 78 Mich App 324, 331; 260 NW2d 85 (1977). We believe it is also inappropriate where the price in the agreement is imposed by law, in this case by the ICC.

The trial court rejected defendant's contention that the contracts were unenforceable. Plaintiff's recovery was limited by the amounts set forth in the rate schedule. Otherwise, a carrier might be able to reap an enhanced profit from the illegality of its own conduct. At oral argument, plaintiff's attorney opined that the carrier might recover an amount greater than that allowed by the rate schedule by employing a *quantum meruit* theory in cases in which the carrier lacked an applicable interstate tariff. We reject this view.

In this case, however, plaintiff recovered the same amounts as were dictated by the ICC through its approval of the rate schedules. The jury was convinced that these amounts represented the reasonable value of the transportation services, despite defendant's assertions that plaintiff's services lacked value. This measure of damages yielded the same result as direct application of the schedule itself.

Defendant raises five issues to support his position, none of which has merit.

First, defendant renews his argument that the contracts were invalid and unenforceable because plaintiff had no applicable interstate tariff or certificate for the four routes on which the animals were carried. In *Ets-Hokin & Galvan, Inc v Maas Transport, Inc,* 380 F2d 258 (CA 8, 1967), the

plaintiff sued to recover the costs of transporting cable manufactured in Texas for installation at a missile complex in North Dakota. A federal district court had previously ruled that transportation of such cable was interstate commerce.[2] The defendant argued that, since the plaintiff had no applicable interstate tariff, its contract with the plaintiff was illegal and unenforceable. The United States Court of Appeals disagreed:

"A contract in violation of a statutory provision generally is void or illegal only if the legislative body enacting the statute evidences an intention that such contracts be considered void or illegal. See, *e.g., McCullough Transfer Co v Virginia Sur Co,* 213 F2d 440 (CA 6, 1954); *Macco Const Co v Farr,* 137 F2d 52 (CA 9, 1943); *Guffey-Gillespie Oil Co v Wright,* 281 Fed 787 (CA 8, 1922); *Talco Capital Corp v Canaveral Int'l Corp,* 225 F Supp 1007 (SD Fla, 1964); 17 CJS § 202 at p 1007 (1963). Otherwise, even though the parties to a contract may be subject to a statutory penalty as the result of performing a contract, the contract itself remains in full force and effect. In the instant case, Maas was in violation of the Motor Carrier provisions of the Interstate Commerce Act when it transported cable under its contract with Ets-Hokin and was subject to penalties for such violations. The cable transportation contract itself, however, would be void, illegal or unenforceable only if Congress, in passing the Motor Carrier provisions of the Interstate Commerce Act, intended that contracts resulting in violations of that portion of the Act be illegal and void. A review of the statutory provisions involved herein reveals no congressional intention to make contracts in violation thereof void or illegal. The contract between Ets-Hokin and Maas was valid and enforceable." (Footnote omitted.) 380 F2d 260-261.

In this case, plaintiff may have been subject to civil and criminal penalties for its repeated viola-

[2] *Great Northern R Co v Thompson,* 222 F Supp 573 (D ND, 1963).

tions of the certificate requirement, 49 USC 10921, 11901 *et seq.*, but the contracts remained valid and enforceable. Defendant refers to *Arkansas Louisiana Gas Co v Hall,* 453 US 571; 101 S Ct 2925; 69 L Ed 2d 856 (1981), as an instance in which the Court held unapproved charges illegal and unenforceable. In *Hall,* the plaintiff sued to recover under a contract for sale of natural gas. The contract provided that the price would increase if the seller had to pay a higher price for the gas. 453 US 573. The United States Supreme Court held that the seller could not recover the difference between the original price and the subsequently increased price. This holding was an application of the "filed rate doctrine", which "prohibits a federally regulated seller of natural gas from charging rates higher than those filed with the Federal Energy Regulatory Commission pursuant to the Natural Gas Act", 15 USC 717 *et seq.* 453 US 573.

Under the Interstate Commerce Act, there is no "filed rate", but only the rate approved by the commission. *United Gas Pipe Line, supra.* There was no deviation from the mandated rate in this case. The price terms of the contracts contained nothing inconsistent with federal requirements. Compare, *Farley Terminal Co, Inc v Atchison, T & S F R Co,* 522 F2d 1095 (CA 9, 1975). Also inapposite are cases in which the United States Supreme Court held recovery barred because the contract provided for performance of a service in addition to or different than the service which is the basis for the approved rate. *Davis v Cornwell,* 264 US 560; 44 S Ct 410; 68 L Ed 848 (1924); *Chicago & A R Co v Kirby,* 225 US 155; 32 S Ct 648; 56 L Ed 1033 (1912).

Defendant's next claim involves the disqualification of the original trial judge. The original judge

denied defendant's motion for disqualification. The issue of disqualification was referred to the State Court Administrator for assignment to another judge. GCR 1963, 912.3(c)(2). The assigned judge granted defendant's motion for disqualification of the trial judge, concluding that, due to the trial judge's past dealings with defendant (an attorney), "there might be some appearance of impropriety" if the judge were allowed to continue. However, the circuit judge who granted the motion found "no reason to doubt" the trial judge's statement "that he could sit on this matter and serve impartially".

Defendant now argues that all orders entered by the trial judge prior to his disqualification are void. We disagree. There was no finding that the judge was personally biased or prejudiced against defendant. GCR 1963, 912.2(a)(2). The assigned judge disqualified him because of a possible appearance of impropriety. The basis for disqualification was not so serious as to render the judge's prior rulings void. *Brill v Brill*, 75 Mich App 706, 711; 255 NW2d 739 (1977). In addition, defendant fails to specify how the original judge's rulings affected the outcome. Defendant was free to assign error to any of these decisions. The most significant of the rulings, the grant of summary judgment on defendant's affirmative defense grounded in federal law, was correct. *Ante.*

Next, defendant argues that the judge assigned to preside at trial acted unfairly toward him. Defendant devotes 60 pages of his brief[3] to excerpts from the transcript which, he urges, show that the trial judge prevented him from presenting

---

[3] This one section of defendant's brief would now exceed the 50-page limitation set forth in MCR 7.212(B). Since this rule was not in effect when defendant's brief was filed, no criticism of defendant is implied. Attorneys are reminded of the rule for future cases.

his case. We have reviewed those portions of the transcript and have found no unfair treatment of defendant by the trial court. *Rushing v Wayne County,* 138 Mich App 121, 149; 358 NW2d 904 (1984); *Ferrell v Vic Tanny Int'l, Inc,* 137 Mich App 238, 247-248; 357 NW2d 669 (1984).

Defendant also complains that plaintiff's attorney acted improperly. According to defendant, counsel for plaintiff engaged in "outrageous conduct" and "showed nothing but contempt for the rules of procedure and propriety". From defendant's brief, we cannot discern whether defendant was victimized by a pattern of misconduct, since he advances this claim without a single reference to the record. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims." *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959). See, also, *Beaumont v Brown,* 125 Mich App 464, 466; 336 NW2d 26 (1983).

Finally, defendant challenges the order for costs and attorney fees on three grounds. The first, that the original order assigning the case to a mediation panel is void because the judge was later disqualified, is dealt with elsewhere in this opinion.

Secondly, defendant argues that the attorney fee award is excessive according to the guidelines adopted by the Supreme Court in *Wood v DAIIE,* 413 Mich 573, 588; 321 NW2d 653 (1982). We have examined the hourly rates applied by the trial court and the number of hours allowed, in light of the factors listed in *Wood, supra.*[4] The trial court

---

[4] The professional standing and experience of the attorney; the skill, time and labor involved; the result of the trial; difficulty of the case; expenses incurred; and the nature and length of the realtionship with the client. *Id.*

did not abuse its discretion. *Petterman v Haverhill Farms, Inc,* 125 Mich App 30, 32; 335 NW2d 710 (1983). It is noteworthy that defendant did not even appear at the hearing on plaintiff's motion for actual costs, much less challenge the reasonableness of the award in the trial court. At oral argument, defendant, an attorney representing himself, stated that he failed to appear for the hearing on costs and attorney fees because he assumed that the result was a foregone conclusion and that he had no chance of prevailing. Defendant knows as an attorney that one purpose of a hearing in the trial court is to make a record so that the case can be reviewed by an appellate court. When a party deliberately fails to appear, we have nothing to review unless an error of the trial court is self-evident from the record. Such is not the case here.

Thirdly, defendant argues that GCR 1963, 526.10(1) requires the court to tax costs when the court signs the judgment, not later. We believe the court may tax the costs at a later date. Indeed, costs are "rarely" taxed when judgment is entered, because "the supporting data needed to tax costs is not usually gathered until after the prevailing party is determined". 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 91. Furthermore, the mediation rule specifically requires that the reasonable attorney fee be "determined by the trial judge". GCR 1963, 316.8; MCR 2.403(O)(3). It would make no sense to forestall entry of the judgment until the court is ready to decide the amount of the attorney fee award.

Affirmed.