James J. CARRAS, Plaintiff-Appellant,

v.

G. Mennen WILLIAMS, Chief Justice; Thomas G. Kavanagh, Justice; James L. Ryan, Justice; James H. Brickley, Justice; Michael F. Cavanagh, Justice; Charles L. Levin, Justice; Patricia L. Boyle, Justice; of the Supreme Court of Michigan in their official capacity; Daniel Walsh, State Court Administrator in his official capacity; Joseph R. McDonald, Circuit Judge, in his individual and official capacity; Eugene C. Penzien, Circuit Judge, in his individual and official capacity; James Andrzejewski; David F. Oeming, Jr.; Robert D. Kinsey, Jr.; Stan Baker; Ray Priddy; Ann Priddy; Fred Hayes; Ron Stevens d/b/a Stevens Farm; Thomas Chisolm; and Vida Randall, Defendants-Appellees.

No. 85–1331.

United States Court of Appeals,
Sixth Circuit.

Cause Argued Aug. 12, 1986.

Decided Dec. 15, 1986.

James J. Carras, pro se, Bay City, Mich.

Leopold P. Borrello, Jill K. Smith (argued), Saginaw, Mich., George H. Weller (argued), Asst. Atty. Gen., Lansing, Mich., David F. Oeming, Jr. (argued), Saginaw, Mich., Randall L. Frank (argued), Bay City, Mich., Gene A. Farber, Detroit, Mich., David M. Stewart (argued), Flint, Mich., for defendants-appellees.

Before: JONES and KRUPANSKY, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Plaintiff-appellant James J. Carras appeals from the district court order dismissing his action brought pursuant to 42 U.S.C. § 1983 (1982) and 18 U.S.C. § 1961 *et seq.* (1982). Carras argues that the district court improperly invoked the Eleventh Amendment of the United States Constitution to bar his claims for injunctive relief against the Michigan Supreme Court Justices and the Court Administrator. He further contends that the court erred in abstaining from his remaining claims for injunctive and monetary relief on the authority of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. We find that Carras' attempt to enjoin the supreme court justices and the court administrator, state trial judges Penzien and McDonald, and attorney Oeming from participating in the challenged state court action has become moot, and that the district court erred in abstaining from Carras' additional claims for injunctive relief and damages. Accordingly, we vacate in part, reverse in part, and remand this case to the district court for further proceedings.

In March of 1980, James J. Carras, a Michigan attorney who also owns thoroughbred racing horses, was named defendant by Hull & Smith Horse Vans, Inc. ("Hull & Smith") in a Michigan state court suit. Hull & Smith alleged that Carras had breached their contract for the transporta-

tion of Carras' horses. Carras denied that any such contract existed and further defended the action on the ground that Hull & Smith's failure to comply with the requirements of the Interstate Commerce Act precluded recovery. Carras' Interstate Commerce Act defense was rejected, and Hull & Smith obtained a judgment against Carras of $20,797.85. This judgment was affirmed on appeal, and Carras' subsequent petition to the United States Supreme Court for writ of *certiorari* was denied. *Hull & Smith Horse Vans, Inc. v. Carras*, 144 Mich.App. 712, 376 N.W.2d 392 (1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 91, 93 L.Ed.2d 43 (1986).

Although the state court suit appeared to be and was tried as an ordinary contract action, Carras asserted in this *pro se* action before the federal district court that the state court suit was merely the culmination of a widespread conspiracy perpetrated against him by individuals in the horse racing business and members of the Michigan Bar and Judiciary. According to Carras, the individuals in the horse racing industry [1] attempted to destroy Carras' horse racing business and reputation through various means,[2] and finally manipulated Carras into defending the Hull & Smith state court action.[3] Hull & Smith's attorney, David P. Oeming, Jr., and the trial judges in the state court action, Eugene C. Penzien and Joseph R. McDonald, allegedly denied Carras an impartial tribunal in furtherance of the conspiracy.[4] Finally, the conspiracy was perfected by the participation of the Michigan Supreme Court Justices and the Court Administrator, who allegedly refused to intervene in the trial court proceedings in complete disregard of the "overwhelming" evidence which Carras produced to show that the trial judges were prejudiced against him.

In the district court, Carras contended that the alleged conspiracy deprived him of his property and liberty without due process of law in violation of the Fourteenth Amendment, and abridged privileges and immunities guaranteed to him by that amendment. U.S. Const. amend. XIV, § 1. Pursuant to section 1983, 42 U.S.C. § 1983 (1982), Carras sought to enjoin the Michigan Supreme Court Justices and the Court Administrator, state trial judges Penzien and McDonald, and attorney Oeming from future participation in the state court action. Carras also sought additional injunctive relief and damages under section 1983 and under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 *et seq.* (1982). Specifically, under section 1983, Carras sought to enjoin Ray and Ann Priddy from proceeding against him before the California Horse Racing Board. Pursuant to his RICO claim, Carras sought to enjoin several defendants from: interfering with his business relationships; attempting to obtain money from Carras through harassment;

1. These individuals include defendants Ray & Ann Priddy, Robert D. Kinsey, Jr., Stan Baker, Fred Hayes, Ron Stevens d/b/a Stevens Farm, Thomas Chisolm, and Vida Ann Randall.

2. Specifically, Carras alleged that these individuals were responsible for his being disciplined without justification by the State Racing Boards of both California and Pennsylvania. Carras also alleged that these defendants conspired to ruin him financially by wrongfully denying him the possession and use of his horses. He recited a long list of fraudulent misrepresentations and other objectionable actions allegedly taken by the defendants. In addition, Carras alleged that several of the defendants charged Carras unjustifiable amounts for horse care to cause him further financial injury.

3. Carras also alleged that defendant James Andrzejewski, an official process server, took part in the conspiracy by filing a fraudulent return of service.

4. Carras alleged that Judge Penzien was predisposed to rule against Carras because of previous contacts between the two when Penzien was a prosecuting attorney and Carras defended an accused criminal. It is unknown what moved Oeming and Judge McDonald to join the alleged conspiracy. Whatever their motivation, Carras alleged that they were able to combine to deny him an impartial tribunal by making false representations to Carras, interfering with the presentation of Carras' case, manipulating the proceedings to Carras' detriment, engaging in *ex parte* communications, and completely disregarding proper procedure and controlling state and federal law.

and inducing any other person to harass Carass or to institute legal actions against Carras. Finally, his damage claims under section 1983 and RICO sought recovery from all defendants except the Michigan Supreme Court Justices and the Court Administrator for injuries resulting from the alleged conspiracy, including injuries allegedly arising both from the defendants' prosecution of the state court action and from their transactions with Carras in the horse racing business.

The district court dismissed Carras' suit, holding that the Eleventh Amendment barred the action against the Michigan Supreme Court Justices and the Court Administrator, and that *Younger* and its progeny required abstention from the case against the remaining defendants. This appeal ensued. Our review will employ a three-part analysis, considering separately Carras' attempt to enjoin several defendants from participating in the state court action, his requests for additional injunctive relief, and his claims for damages.

■ We find that Carras' attempt to enjoin participation in the state court proceedings has become moot.[5] "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969). Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief. *See Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 514, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); 6A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice ¶ 57.13, at 57–123 to 57–127 & n. 11 (1986) (citing cases). Because the requested relief will not be forthcoming, the plaintiff will no longer have an interest in the outcome

which justifies a federal court's decision on the underlying factual and legal issues. *Cf. County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Indeed, if a case becomes moot, it does not satisfy the "case or controversy" requirement of Article III, U.S. Const. art. III, § 2, and the federal courts are powerless to decide it. *See SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972); *United States v. City of Detroit*, 720 F.2d 443, 448 (6th Cir.1983).

■ In the instant case, Carras sought to enjoin the Michigan Supreme Court Justices and the Court Administrator, state trial judges Penzien and McDonald, and attorney Oeming from participating in the pending state court action. When the United States Supreme Court denied Carras' petition for writ of *certiorari*, however, the Michigan trial court judgment became final and the state court suit was terminated. *Carras v. Hull & Smith Horse Vans, Inc.*, — U.S. —, 107 S.Ct. 91, 93 L.Ed.2d 43 (1986). Because there is no longer a state court proceeding from which to enjoin the named defendants' participation, the relief which Carras has sought can no longer be given by a federal court. Therefore, this aspect of Carras' suit has become moot. Accordingly, we vacate the district court's order dismissing, on Eleventh Amendment grounds, Carras' claims against the Michigan Supreme Court Justices and the Court Administrator. Likewise, we vacate the court's order insofar as it invoked *Younger* abstention to dismiss Carras' claims which sought to enjoin state trial judges Penzien and McDonald and attorney Oeming from future participation in the state court proceeding. These claims are remanded to the district court with directions that they be dismissed as moot.[6] *See Duke Power Co.*

5. Because mootness implicates federal court jurisdiction under Article III, we are obliged to consider the question on our own motion. *See In re F & T Contractors, Inc.*, 718 F.2d 171, 180 (6th Cir.1983); *Jones v. Perrigan*, 459 F.2d 81, 83 (6th Cir.1972).

6. Hence, we express no opinion concerning the propriety of the district court's Eleventh Amendment holding, or its decision to abstain from Carras' request to enjoin Penzien, McDonald and Oeming from participating in the state court proceeding. Because Carras' complaint against the Michigan Supreme Court Justices

*v. Greenwood County,* 299 U.S. 259, 267–68, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936)· (per curiam) (appellate procedure for moot cases).

The Supreme Court's denial of *certiorari* does not moot Carras' remaining claims for additional injunctive relief and damages, however, because such relief is not contingent on the pendency of the state litigation. *See Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 8, 98 S.Ct. 1554, 1559, 56 L.Ed.2d 30 (1978); *Caldwell v. Craighead,* 432 F.2d 213, 218–19 (6th Cir. 1970), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1617, 29 L.Ed.2d 123 (1971); *see also Banas v. Dempsey,* 742 F.2d 277, 281 (6th Cir.1984) (dictum), *aff'd sub nom. Green v. Mansour,* —— U.S. ——, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). We proceed to consider, therefore, whether the district court erred in abstaining from these claims.

■ Our review of the *Younger* doctrine convinces us that the district court erred in abstaining from Carras' claims for additional injunctive relief. Under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, the policies of comity and federalism, which require federal courts to maintain "a proper respect for state functions," *id.* at 44, 91 S.Ct. at 750, permit a federal court to decline to hear a case in which: (1) a federal court is called upon to enjoin an ongoing noncriminal state judicial proceeding;[7] (2) the proceeding implicates vital state inter-

ests; and (3) the proceeding provides an adequate opportunity to raise constitutional challenges. *See Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc.,* 720 F.2d 897, 902 (6th Cir.1983). Abstention from such cases serves the policies of comity and federalism by preventing the federal courts from "unduly interfer[ing] with the legitimate activities of the States." *Younger,* 401 U.S. at 44, 91 S.Ct. at 750; *see also Huffman v. Pursue Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). "*Younger* ... and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County,* 457 U.S. at 431, 102 S.Ct. at 2520.

■ Carras' claims for additional injunctive relief, however, were aimed at stopping any alleged violations of the RICO Act and the Priddys' action against him before the California Horse Racing Board—activities unrelated to the ongoing Michigan state court action. Because these claims sought neither to interrupt nor to challenge the propriety of the pending Michigan state court suit, we hold that the district court erred in abstaining from them. Accordingly, the court's decision to dismiss Carras' claims for additional injunctive relief is reversed.[8]

---

and the Court Administrator sought only to enjoin their participation in the state court action, however, these defendants will no longer be parties to the instant lawsuit when the district court dismisses as moot Carras' claims against them.

7. This court has recently held that "the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed." *Zalman v. Armstrong,* 802 F.2d 199, 204 (6th Cir.1986). At the time Carras filed his federal suit, the state court action was still ongoing. Thus, the Supreme Court's recent denial of Carras' petition for writ of *certiorari* has no effect on this portion of our analysis.

8. We perceive that the district court invoked *Younger* abstention due to the pendency of the

Michigan state court action and, therefore, reverse the district court as to this decision. Carras' attempt to enjoin Ray and Ann Priddy from proceeding before the California Horse Racing Board, however, may yet present a proper case for abstention. *Cf. Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* —— U.S. ——, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (abstention from state administrative proceedings). Because the record on appeal does not reveal whether the Board was engaged in a pending judicial proceeding against Carras, or whether Carras could have raised constitutional challenges in the course of such a proceeding, we are unable to affirm the district court's abstention from this claim. *See id.; Middlesex County,* 457 U.S. at 432, 102 S.Ct. at 2521. On remand, the district court is free to consider the proprie-

Finally, we review the district court's decision to abstain from Carras' section 1983 and RICO claims for monetary relief. As previously noted, Carras sought monetary relief for injuries he allegedly suffered in transacting his horse racing business with defendants. *See supra* notes 1 & 2. Like Carras' claims for additional injunctive relief, these claims did not challenge the propriety of the pending state court action. Therefore, we hold that the district court erred in abstaining from Carras' damage claims which were unrelated to the challenged state court proceeding.

Carras' claims which sought damages allegedly arising from prosecution of the state court action present a more difficult issue for us, however, because those claims directly questioned the propriety of the state court proceeding. *See Juidice v. Vail,* 430 U.S. 327, 339 n. 16, 97 S.Ct. 1211, 1219 n. 16, 51 L.Ed.2d 376 (1977) (expressly leaving open the question of whether the *Younger* doctrine mandates abstention from damage claims arising from a state judicial proceeding). Nevertheless, this circuit's recent review of the *Younger* doctrine as applied to noncriminal state proceedings and our consideration of the policies of comity and federalism which underlie *Younger* persuade us that the district court also erred in abstaining from these claims for damages.

In *Traughber v. Beauchane,* 760 F.2d 673 (6th Cir.1985), the underlying state court proceeding was a tort action between private parties. Pursuant to state law, plaintiffs secured a prejudgment attachment and seizure of the Traughbers' real property. When the state court upheld the attachment and seizure, the Traughbers brought suit in federal court alleging that the statutory procedure deprived them of their property without due process of law, and seeking declaratory and injunctive relief.[9] *Id.* at 675. In reviewing the district

court's decision to abstain under *Younger,* this court focused on the requirement that the ongoing state proceeding must implicate some vital state interest. *See id.* at 676–81. *Traughber* concluded that "[w]hen the state is not a party, and when the underlying judicial proceeding is not a criminal action, *Younger* abstention is inappropriate absent extraordinary circumstances." *Id.* at 680. We reversed the district court's decision to abstain because the underlying state court action neither implicated vital state interests nor presented extraordinary circumstances: the "tort suit against the Traughbers hardly qualifie[d] as a '[p]roceeding( ) necessary for the vindication of important state policies or the functioning of the state judicial system.' " *Id.* (quoting *Middlesex County,* 457 U.S. at 432, 102 S.Ct. at 2521.).

The propositions announced in *Traughber* take on added force in federal suits arising from state court proceedings which seek monetary relief, but do not seek to enjoin the judicial proceedings. Suits which seek only monetary relief are much less intrusive into legitimate state functions than actions for injunctive or declaratory relief. *Cf. Bishop v. State Bar of Texas,* 736 F.2d 292, 295 (5th Cir.1984) (holding that a claim for damages is a "species of relief wholly unaffected by *Younger*"). Moreover, while federal adjudication of a damage claim may affect state judicial proceedings in some circumstances, *see, e.g., Guerro v. Mulhearn,* 498 F.2d 1249, 1253–54 (1st Cir.1974) (describing possible disruptions of state criminal proceedings), the mere possibility of an impact on state proceedings is insufficient to warrant abstention. *See Younger,* 401 U.S. at 44, 91 S.Ct. at 750 (rejecting "blind deference" to state functions); *Traughber,* 760 F.2d at 680–81. Accordingly, we conclude that a federal court should not abstain from a case seeking monetary relief when the suit

---

ty of abstaining from claims concerning pending Board action.

9. Not unlike the instant case, the Traughbers' federal suit named as defendants not only the plaintiffs in the state court, but also a state

court clerk, the judge who upheld the attachment, and the plaintiffs' attorney in the state court. *Traughber v. Beauchane,* 760 F.2d 673, 675 (6th Cir.1985).

arises from a state judicial proceeding to which the state is not a party absent extraordinary circumstances. *See Traughber,* 760 F.2d at 680.

■ Applying the foregoing principles to the instant case, we hold that the district court erred in abstaining from Carras' claims for damages which arose from the challenged state court proceeding. The underlying state court action, a civil suit between private litigants, presented no "extraordinary circumstances" which justified abstention. The only state interest arguably impacted in the state court proceeding, and the interest relied on by the district court in abstaining, is the state's interest in the administration of its judicial system. As was suggested in *Traughber,* 760 F.2d at 680, however, *Younger* abstention is proper only when the state asserts a vital interest which is directly in issue in the underlying state proceeding. *See, e.g., Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* —— U.S. ——, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (eliminating sex-based discrimination through administrative process); *Middlesex County,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (regulating conduct of licensed attorneys through disciplinary proceedings); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (protecting neglected or abused children through summary judicial process); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (safeguarding financial integrity of state welfare programs through attachment and seizure of applicants' undisclosed property); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (enforcing state court judgment through contempt process); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (enforcing nuisance law through quasi-criminal proceedings); *Younger,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (enforcing criminal law). In such cases, a vital state interest is "implicated" in the state court proceeding because the state

interest is the subject matter of that proceeding. Federal courts abstaining from such cases pursuant to *Younger* serve the principles of comity and federalism by refusing to interfere with the state's implementation of its substantive policies, *Huffman,* 420 U.S. at 604, 95 S.Ct. at 1208, or with the state's enforcement of its judicial decisions, *Juidice,* 430 U.S. at 335–36, 97 S.Ct. at 1217. *See Traughber,* 760 F.2d at 676–81.

In the instant case, however, the state's admittedly important interest in administering its judicial system was not "implicated" in the underlying proceeding, a contract dispute. Because the subject matter of the state court proceeding was a private contract action which sought neither to implement important state policies nor to vindicate the operation of the state's judicial system, the state proceeding cannot be said to implicate vital state interests. *See Middlesex County,* 457 U.S. at 432, 102 S.Ct. at 2521; *Traughber,* 760 F.2d at 680. In the absence of a vital state interest in the underlying proceeding, abstention from a suit for damages arising out of that proceeding is inappropriate. Accordingly, we hold that the district court erred in abstaining from Carras' claims for monetary relief.

In light of the foregoing, the district court's order dismissing Carras' suit is *vacated* in part, *reversed* in part, and *remanded* to the district court for further proceedings not inconsistent with this opinion.