BUTZER v CAMELOT HALL CONVALESCENT CENTRE, INC

Docket No. 111083. Submitted August 16, 1989, at Detroit. Decided November 15, 1989.

Grace L. Butzer applied for employment as a registered nurse for Camelot Hall Convalescent Centre, Inc. The application she signed contained a statement that she understood and agreed that her employment could be terminated at any time without any previous notice. Following that was a cautionary statement that the terms of the at will termination clause could only be changed by the administrator in writing. Butzer was hired and began work on May 10, 1982. She was given an employee handbook which contained a list of reasons for which an employee would be subject to immediate dismissal. Subsequently, employee work rules were issued to union members in conjunction with contract negotiations. The work rules were also given to the professional staff, including Butzer, and listed nine reasons for the immediate dismissal of an employee. Included in the work rules was the statement that, after completion of a period of probationary employment, no employee could be discharged without just and sufficient cause. In September, 1983, upon her return from a vacation, Butzer was informed that the condition of one of the centre's patients, Mrs. Hadley, had gotten worse. Butzer suggested the doctors perform chemistry tests, including a blood sugar test, on Mrs. Hadley. No blood sugar test was performed. Mrs. Hadley was transferred to a hospital at her daughter's request, where tests showed that she had a very high blood sugar level. The next day, the centre's director of nursing informed Butzer that the centre's administrator wanted Butzer's resignation because she had failed to "pick up on" Mrs. Hadley's case. Butzer refused, and her employment was terminated. Butzer filed suit against Camelot Hall Convalescent Centre, Inc., in Wayne Circuit Court alleging wrongful discharge and age discrimination. Defendant moved for summary disposition, arguing that plaintiff

REFERENCES

Am Jur 2d, Master and Servant §§ 32, 34, 37.

Right to discharge allegedly "at-will" employee as affected by employer's promulgation of employment policies as to discharge. 33 ALR4th 120.

had no just cause contract, that the work rules and handbook did not apply to her, and that her discharge was warranted by just cause. The court, Harry J. Dingeman, Jr., J., granted defendant's motion, finding that plaintiff's subjective expectancy that the work rules altered the express written contract to accord her employment terminable for just cause only was insufficient in law. Plaintiff appealed.

The Court of Appeals *held:*

1. An employee is bound by an at will termination clause in an application for employment. Plaintiff's contract of employment with defendant included the at will termination provision in her application.

2. The evidence before the trial court created a question of fact on the issue whether plaintiff's expectation that she would be discharged only for just cause was legitimate. The at will termination clause in the application for employment was followed by the cautionary statement that its terms could only be changed by the administrator in writing. Whether the handbook or the work rules constituted a change in the stated at will termination clause by the administrator in writing was a question of fact. Furthermore, the evidence on whether the handbook and the work rules applied to plaintiff was conflicting. The documents and testimony considered by the trial court created a material question of fact, to be resolved by the jury, as to whether plaintiff's subjective expectancy was legitimate. The court erred in granting defendant's motion for summary disposition and in dismissing plaintiff's wrongful termination claim.

Reversed.

1. MASTER AND SERVANT — WRONGFUL DISCHARGE — AT WILL TERMI-
   NATION CLAUSES — EMPLOYMENT APPLICATIONS.

   An employee is bound by an at will termination clause in the application for employment; the at will termination clause may be considered part of the written contract of employment by which the employer can explicitly provide that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer.

2. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION
   FOR CAUSE — IMPLIED CONTRACTS.

   An employer whose statements in an employee policy manual or otherwise tend to create legitimate expectations in the employees' minds that they would be discharged only for just cause may be required, under a theory of implied contract, to fulfill those expectations by discharging only for just cause, but an

employee's mere subjective expectancy that he will not be discharged except for cause does not create a legitimate claim to continued employment.

3. Master and Servant — Employment Contracts — Implied Contracts — At Will Termination Clauses.

 Whether an employee's expectation that she would be discharged only for just cause was legitimate was a question of fact to be resolved by the jury where (1) the employee signed an application for employment which included an at will termination clause followed by a cautionary statement that the termination clause could only be changed by the employer in writing, (2) the employee was given an employee handbook which listed acts for which immediate dismissal would result but also created a procedure under which an employee would receive three warnings before dismissal and received written work rules which stated that nonprobationary employees would not be discharged without just and sufficient cause, and (3) there was disagreement as to whether the employee handbook and the written work rules applied to the employee, a nonunion member of the supervisory staff.

*Daryle Salisbury,* for plaintiff.

*Roger H. Leemis,* for defendant.

Before: MacKenzie, P.J., and Marilyn Kelly and T. M. Burns,* JJ.

Per Curiam. On August 5, 1988, the trial court granted defendant's motion for summary disposition of plaintiff's complaint, which alleged claims of wrongful discharge and age discrimination. Plaintiff appeals as of right from the court's order dismissing her wrongful discharge claim. We reverse.

On April 15, 1982, plaintiff completed an application for employment as a registered nurse for defendant and signed her name below the following statements:

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

> Further, I understand and agree that my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without any previous notice. This arrangement may only be changed by the administrator in writing.

Plaintiff began work as a supervisor for defendant on May 10, 1982. She was given a handbook for employees, which stated in pertinent part:

> An employee shall be subject to immediate dismissal for:
> a. A verified report of dishonesty toward a patient or employee.
> b. Theft
> c. Use of alcohol on or before coming on duty.
> d. Use of narcotics or drugs.
> e. Threatening or committing bodily harm to a patient or employee.
> f. Punching another employee's time card.
> g. Violation of Employer's work rules.
> h. Walking off the job.
> *Warnings:* In some instances employees will be given warnings before being dismissed. After three (3) warnings are given for any reason, the employee will be discharged. The employee will receive a copy of each warning.

Subsequently, employee work rules were issued to union members in conjunction with contract negotiations. The work rules, which also were given to the professional staff, including plaintiff, listed nine reasons for the immediate dismissal of an employee and stated:

> 24. After completion of the probationary period, no employee shall be discharged without just and sufficient cause. Should the union committee wish to contest a dismissal, *written notice* shall be given

to the employer within five (5) days of the discharge. The issue will then follow the unions grievance procedure. (see contract). [Emphasis in original.]

According to plaintiff, in September, 1983, upon her return from vacation, another supervisor informed her that the condition of Ethel Hadley, a patient, had changed and that Hadley was suffering extreme thirst and general malaise. Mrs. Hadley's change in condition had occurred a week to ten days before plaintiff's return and had been reported to Dr. Miller, who had informed Hadley's family. Although Dr. Miller felt that Hadley's condition would not improve, plaintiff followed up on the case by suggesting, a few days after her return, that Drs. Miller and Steinhoff order some chemistry tests, as well as a blood sugar test. Although Dr. Steinhoff ordered a complete blood count, no blood sugar test was ordered. As a nurse, plaintiff could neither diagnose a patient's illness nor order tests. Subsequently, Mrs. Hadley was transferred at her daughter's request to the hospital, where tests showed that she had a very high blood sugar level. The next day, on September 20, 1983, Mary Hynes, defendant's director of nursing, informed plaintiff that Nancy Mix, the nursing home administrator, wanted plaintiff's resignation, because she had failed to "pick up on" Mrs. Hadley's case. When plaintiff refused to resign, her employment was terminated.

On March 11, 1985, plaintiff filed her complaint alleging wrongful discharge and age discrimination. Defendant moved for summary judgment pursuant to MCR 2.116(C)(8) and (10), arguing that plaintiff had no just cause contract, that the work rules and handbook did not apply to her, and that her discharge was warranted by just cause. Citing

*Toussaint v Blue Cross & Blue Shield of Michigan,*
408 Mich 579; 292 NW2d 880 (1980), the trial court
concluded:

> The Court finds that plaintiff's subjective expec-
> tancy that the "work rules" altered the express
> written contract to accord her employment termi-
> nable for just cause only [was] insufficient in law.

Because the court's determination required con-
sideration of documents beyond the pleadings, we
conclude that summary disposition was granted
pursuant to MCR 2.116(C)(10) and review the
court's decision in that context. Summary disposi-
tion of all or part of a claim or defense may be
granted when,

> [e]xcept as to the amount of damages, there is no
> genuine issue as to any material fact, and the
> moving party is entitled to judgment or partial
> judgment as a matter of law. [MCR 2.116(C)(10).]

A motion for summary disposition under subpara-
graph (C)(10) tests whether there is factual support
for a claim. The court must consider the pleadings,
affidavits, depositions, admissions and other docu-
mentary evidence available to it. *Dumas v Auto
Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d
480 (1988). The party opposing the motion has the
burden of showing that a genuine issue of disputed
fact exists, *id.,* and the disputed factual issues
must be material to the dispositive legal claims.
*Belmont v Forest Hills Public Schools,* 114 Mich
App 692, 696; 319 NW2d 386 (1982), lv den 422
Mich 891 (1985).

In claiming that summary disposition was im-
properly granted, plaintiff argues that her applica-
tion for employment, which expressly provided for
at will termination, was not an employment con-

tract. In *Toussaint, supra* at 612, n 24, our Supreme Court described the manner in which an employer could insure that an employment contract was terminable at will:

> Where the employer has not agreed to job security, it can protect itself by entering into a written contract which explicitly provides that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer.

See also *Ledl v Quik Pik Food Stores, Inc,* 133 Mich App 583, 588; 349 NW2d 529 (1984). In *Reid v Sears, Roebuck & Co,* 790 F2d 453 (CA 6, 1986), the Sixth Circuit Court of Appeals considered whether the terms in an application for employment were binding on the parties. Noting that *Toussaint, supra* at 612, required the acknowledgment of at will termination from *prospective* employees, the court concluded that an employee was bound by an at will termination clause in the application for employment. *Reid, supra* at 461-462. See also *Eliel v Sears, Roebuck & Co,* 150 Mich App 137, 139-140; 387 NW2d 842 (1985). Because we agree with the court's conclusion in *Reid,* we find that plaintiff's contract of employment with defendant included the at will termination provision in her application.

We next consider whether there was a material question of fact as to the legitimacy of plaintiff's expectation that she would be discharged only for just cause. In *Toussaint, supra* at 598-599, our Supreme Court stated that an employer whose statements in an employee policy manual or otherwise tend to create legitimate expectations in the employees' minds that they would be discharged only for just cause may be required, under a theory of implied contract, to fulfill those expecta-

tions by discharging only for just cause. The Court reasoned that the creation of such legitimate expectations benefited the employer by securing "an orderly, cooperative and loyal work force," while the employee received "the peace of mind associated with job security and the conviction that he will be treated fairly." *Id.* at 613. An employee's mere subjective expectancy that he will not be discharged except for cause does not create a legitimate claim to continued employment. *Riethmiller v Blue Cross & Blue Shield of Michigan,* 151 Mich App 188, 197; 390 NW2d 227 (1986); *Schwartz v Michigan Sugar Co,* 106 Mich App 471, 478; 308 NW2d 459 (1981), lv den 414 Mich 870 (1982).

We conclude that the evidence before the trial court created a question of fact on the issue whether plaintiff's expectation that she would be discharged only for just cause was legitimate. The at will termination clause in the application for employment was followed by the cautionary statement that its terms could only be changed by the administrator in writing. That phrase may be interpreted as meaning that a change could not be made orally. Thus, whether the handbook or the work rules constituted a change in the stated at will termination clause "by the administrator in writing" was a question of fact.

Furthermore, the evidence on whether the handbook and the work rules applied to plaintiff was conflicting. Deposition testimony appeared to establish that the handbook applied to plaintiff, a nonunion employee. The handbook did not contain an express statement that an employee could only be discharged for just cause, but did create a procedure under which an employee would receive three warnings before dismissal. The language of the warning provision was unclear as to when it

would be utilized. In addition, the warning provision was juxtaposed immediately below a list of acts for which immediate dismissal would result. Under these circumstances, whether the handbook created a "for cause" termination policy was a question of fact to be resolved by the jury. In addition, it is unclear whether the work rules applied to plaintiff. The director of nursing, Mary Hynes, indicated in her deposition that some of the rules were applicable to nonunion members, while the language of the rules suggested that they were applicable only to union members.

The documents and testimony considered by the trial court created a material question of fact, properly resolved by the jury, as to whether plaintiff's subjective expectancy was legitimate. Therefore, the court erred in granting defendant's motion for summary disposition and in dismissing plaintiff's wrongful termination claim.

Reversed.