Melvin K. CONRAD, Plaintiff,

v.

ROFIN–SINAR, INC., a Delaware Corporation, Defendant.

No. 90–70092.

United States District Court, E.D. Michigan, S.D.

March 1, 1991.

Roger McClow, Southfield, Mich., for plaintiff.

Joseph Marshall, Jennifer Zinn, Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is an employer-employee wrongful discharge and an unjust enrichment case. Plaintiff Melvin K. Conrad (Conrad) was terminated by his employer, defendant Rofin-Sinar, Inc. (Rofin-Sinar), a manufacturer of laser systems. Conrad says the termination violates a "just cause" employment contract. Alternatively, Conrad, who was a salesperson for Rofin-Sinar, makes a claim in quantum meruit. Now before the Court is Rofin-Sinar's motion for summary judgment as to all claims. Fed.R.Civ.P. 56(c). Rofin-Sinar says the alleged "just cause" contract is not enforceable because it was made by a representative of Conrad's previous employer, the Industrial Laser Division of Spectra Physics, Inc. Rofin-Sinar says Conrad's quantum meruit claims fails as a matter of law, because: (1) his right to compensation was covered by an express agreement and (2) he failed to exhaust the administrative remedies as noted in *Duncan v. Rolm Mil-Spec Computers and Loral Corp.*, 917 F.2d 261 (6th Cir. 1990). For the reasons which follow, Rofin-Sinar's motion for summary judgment will be denied as to the wrongful discharge claim but it will be granted as to the quantum meruit claim.

### II.

The following facts, as gleaned from deposition testimony, affidavits and documents in the record, are not in dispute.

### A.

In early 1985, Conrad applied for a job as laser systems salesmen with the Industrial Laser Division (ILD) of Spectra Physics. As a division, ILD has no separate corporate existence. During the application process, Conrad asked about job security. Herbert Dwight (Dwight), the president of Spectra Physics, told Conrad that he would remain employed as long as he did a good job selling laser systems.

Shortly after beginning his employment, Conrad received a personnel manual describing Spectra Physics' policies and practices. It listed specific grounds for discipline and provided for formal yearly performance reviews. Spectra Physics had a separate manual for ILD which: (1) listed the same reasons for discipline as the Spectra Physics manual itself, (2) provided for progressive discipline before termination, and (3) provided for formal performance evaluations.

## B.

In March 1988, Spectra Physics sold all of its ILD assets to Siemens Capital Corporation (Siemens) which in turn incorporated Rofin–Sinar, specifically to continue the business of ILD. Rofin–Sinar did not exist before Siemens purchased the assets. After the transaction, Rofin–Sinar informed Spectra Physics customers that ILD "has been sold and is now Rofin–Sinar." All the supervisory personnel who worked at ILD continued to work for Rofin–Sinar in the same or similar capacity.

## C.

### 1.

Before the asset sale, notices were given to Spectra Physics employees stating that their employment with Spectra Physics was terminated, and they would be offered employment by Rofin–Sinar. There is no evidence in the record suggesting Rofin–Sinar issued any policy statement suggesting it would adopt any "just cause" employment contracts which may have been in effect prior to the asset sale. The asset purchase agreement states Rofin–Sinar reserved the right terminate Spectra Physics employees. It also states that Rofin–Sinar retained Spectra Physics employees under "terms and conditions of employment as [it] may determine in its discretion."

### 2.

After the asset sale, Conrad continued to work without interruption, at the same salary, under the same commission plan, with the same reporting requirements, with the same vacation plan, hire date, employee number, personnel file, supervisor, office, car and insurance deductions. He was never asked or required to file an employment application or a W–4 income tax form for Rofin–Sinar.

On May 11, 1988, Spectra Physics placed Conrad on probation as a result of a performance review for the period ending March 31, 1988. After the effective date of the purchase of the ILD assets, Conrad's probationary period was continued by Rofin–Sinar.

### 3.

Rofin–Sinar retained and relied on Spectra Physic's personnel manual. It used the personnel codes, personnel forms and expense reports contained in it.

When Conrad was terminated, Rofin–Sinar followed the termination and exit interview procedures contained in the personnel manual. A Spectra Physics Employee Profile form was generated containing Conrad's original hire date, department number and employee number. The form indicated the termination reason as "42" which is the code in the personnel manual that means "poor performer."

Rofin–Sinar did not develop any additional or different personnel practices before Conrad's termination. It did not notify employees of any changes in personnel policies.

## D.

Rofin–Sinar terminated Conrad on January 27, 1989. The precipitating factor in his discharge was that he allegedly withheld information that Ford Motor Company (Ford) was planning to purchase a competitive laser system. Conrad has testified that he did not fail to communicate information to Rofin–Sinar. Conrad's supervisors at Spectra Physics had previously criticized his communication skills. His May 11, 1988 probation was instituted because he had been tardy in submitting certain written reports. Conrad satisfactorily completed his probationary period, and he was not given any written notice of performance problems between May 11, 1988 and his termination. Conrad's sales performance met the goals established by his supervisors.

## E.

At the time of his termination, Conrad had been negotiating the sale of two large laser systems. After his termination, Rofin–Sinar received the purchase orders for the two systems. Conrad was not paid commission on the sales. Moreover, after his termination, Rofin–Sinar received other purchase orders on which Conrad had worked.

### F.

Conrad's salary structure was embodied in a 1985 letter sent from Tom Liolios (Liolios), a Spectra Physics marketing manager, to Conrad. In the letter, Liolios said Conrad would receive a base salary. In addition, Conrad was eligible to receive incentive payments if he met quarterly sales quotas. The "incentive compensation plan" provided that commissions paid to employees were calculated on the basis of sales order receipts.

### III.

### A.

■ The Michigan Supreme Court has held than an employee can enforce an employer's promise not to terminate employment except for just cause. *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). Such an enforceable agreement can result from either: (1) an employer's "express agreement, oral or written" or (2) "an employee's legitimate expectations grounded in an employer's policy statements." *Id.*, at 598, 292 N.W.2d 880.

■ Applying this standard, a reasonable trier of facts may conclude that an implied "just cause" employment contract existed between Spectra Physics and Conrad. The record contains undisputed evidence that Dwight, the president of Spectra Physic, promised Conrad he would remain employed as long as he did a good job. This fact alone is sufficient to support a verdict that Conrad had a "just cause" employment contract with Spectra Physics. *Id.*, at 597, 292 N.W.2d 880. Spectra Physics adopted other policies that may have given Conrad a "legitimate expectation" that he had a "just cause" employment contract. In particular, its personnel manual listed grounds for discipline. *Butzer v. Camelot Hall*, 183 Mich.App. 194, 202, 454

N.W.2d 122 (1989) (handbook's listing of acts from which termination would result enhances an employee's legitimate expectation he or she would be terminated only for just cause). The personnel manual also provided for annual performance reviews. *Diggs v. Pepsi–Cola Metropolitan Bottling Co.*, 861 F.2d 914, 918–919 (6th Cir. 1988) (employer policy of appraising employees of their performance is evidence of a "just cause" contract). In addition, as Conrad's probation and the personnel manual suggest, Spectra Physics provided for progressive discipline prior to termination. *Langeland v. Bronson Methodist Hospital*, 178 Mich.App. 612, 615–616, 444 N.W.2d 146 (1989) (policy of terminating employees only after a graduated series of disciplinary measures contributes to legitimate expectation that employee would be terminated only for cause).

### B.

### 1.

■ Ordinarily, a purchaser of assets does not assume the liabilities of the selling corporation. *Fenton Area Public Schools v. Sorensen Gross Construction Co.*, 124 Mich.App. 631, 335 N.W.2d 221 (1983); S. Siegel, S. Schulman & C. Moscow, *Michigan Business Corporations*, § 7.14 (1979). However, under Michigan law, a purchaser of assets assumes the selling corporation's liabilities where: (1) there is an express or implied assumption of liability, (2) the transaction amounts to a consolidation or merger, (3) the transaction was fraudulent, (4) some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for, or (5) the transferee corporation was a mere continuation or reincarnation of the old corporation. *Pelc v. Bendix Machine Tool Corp.*, 111 Mich.App. 343, 351, 314 N.W.2d 614 (1981) (citations omitted).[1]

---

1. Conrad says that it does not need to show that Rofin–Sinar assumed liability under the alleged "just cause" employment contract. Instead, it simply argues that a *Toussaint* claim may be asserted against a successor company like Rofin–Sinar. This contention is meritless and is unsupported by case law. A plaintiff's *Toussaint* claim against a successor company will fail unless it falls within one of the five well-recognized exceptions to the general rule that a purchaser of assets is not responsible for the debts and liabilities of the selling corporation. *See Parker v. Diamond Crystal Salt Co.*, 683 F.Supp. 168 (W.D.Mich.1988).

The issue of whether the purchasing corporation agrees to assume the predecessor corporation's liabilities is a question of fact for the jury. *General Foam Fabricators v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 287 (7th Cir.1982). The presence of such an intention depends on the facts and circumstances of each case. 15 Fletcher, *Cyclopedia of Law of Private Corporations* § 7124 (1990 Rev.Vol.).

### 2.

■ Here, there is a dispute of material fact as to whether Rofin–Sinar impliedly agreed to assume liability under the alleged "just cause" employment contract between Conrad and Spectra Physics. Kay Cooper, Rofin–Sinar's vice president of human resources, has submitted an affidavit in which she makes the conclusory statement that Rofin–Sinar did not adopt the policies of Spectra Physics. Nevertheless, a reasonable trier of the fact could conclude from the undisputed facts in Part II that Rofin–Sinar impliedly agreed to assume liability under the contract.

The evidence of record shows that the period of transition after the sale of the ILD assets may best be defined as one of continuity in which Rofin–Sinar availed itself of many of Spectra Physics' practices, policies and work force. Rofin–Sinar failed to promulgate new personnel policies, and it never disclaimed liability under "just cause" employment contracts that may have existed. It used Spectra Physics' personnel manual which, as stated *supra*, indicates the existence of a "just cause" contract. When Rofin–Sinar purchased the ILD assets, Conrad remained on probation. The fact that Rofin–Sinar informed Spectra Physics' customers that it "is now" ILD

reflects Rofin–Sinar's intention "to assume all benefits and burdens of its predecessor in the continuation of business." *Ladjevardian v. Laidlaw Coggeshall, Inc.*, 431 F.Supp. 834, 840 (S.D.N.Y.1977) (*quoting Wilson v. Fare Well Corp.*, 140 N.J.Super. 476, 356 A.2d 458, 467 (1976)). It is also significant that the same persons remained employed in upper management with Rofin–Sinar after the asset purchase sale. *General Foam Fabricators*, 695 F.2d at 287 (continued employment of upper management is evidence of successor company's intent to assume liability under a confidentiality agreement). All of these undisputed facts, when considered *in toto*, allow a finder of the facts to reasonably conclude Rofin–Sinar acceded to most, if not all[2], of Spectra Physics personnel practices, including honoring any alleged "just cause" employment contracts.[3]

### IV.

### A.

■ Conrad's effort to state a quantum meruit claim fails. Shortly after Conrad's termination, Rofin–Sinar received purchase orders for the sale of two large laser systems. Conrad says he worked on these and other sales and should be compensated for his efforts. Quantum meruit as a theory of recovery is inapplicable where an express contract exists. *Hull and Smith Horse Vans, Inc. v. Carras*, 144 Mich.App. 712, 376 N.W.2d 392 (1985). Here, evidence in the record establishes that Conrad's compensation was the subject of an express policy, initially promulgated by Spectra Physics and later adopted by Rofin–Sinar. The express compensation policy is clearly based on sales orders received. It does not provide incentive payments for

---

**2.** Not all of Spectra Physics' personnel policies remained intact after Rofin–Sinar purchased the ILD assets. For instance, on July 1, 1988, Rofin–Sinar enhanced vacation benefits available to its employees.

**3.** When denying that it agreed to assume liability under the alleged "just cause" contract, Rofin–Sinar relies most heavily on language in the asset purchase agreement that reserves to Rofin–Sinar the right to terminate Spectra–Physics employees and retain them on its own terms.

However, this language is ambiguous and it does not explicitly declare any "just cause" contracts null and void. A reasonable trier of the facts may conclude that: (1) the asset purchase agreement merely gave Rofin–Sinar the discretion to avoid any "just cause" contracts, and (2) Rofin–Sinar subsequently elected not to exercise that discretion. Also, there is no evidence of record that this term of the asset purchase agreement was ever communicated to any Spectra Physics employee.

sales that have not been finalized when an employee is terminated. Under Michigan law, Conrad cannot ignore this fact and invoke the doctrine of unjust enrichment to obtain incentive compensation for sales on which he worked.

### B.

Rofin–Sinar says Conrad's quantum meruit claim is a thinly veiled attempt to recover sales commissions, and therefore, it must be dismissed because he failed to exhaust his administrative remedies. In support, Rofin–Sinar relies on *Duncan, supra.* Some lawyers have interpreted the *Duncan* decision as holding that a plaintiff must file an administrative claim with the Michigan Department of Labor before commencing litigation on any wage dispute.[4]

### 1.

The district courts in this circuit are, of course, bound by a decision of the court of appeals even if they think that decision is egregiously in error. *Timmreck v. United States,* 577 F.2d 372, 374 n. 6 (6th Cir.1978); *See also Padolecchia v. Padolecchia,* 3 All E.R.Rep. 863, 872 (1967).

■ However, Rofin–Sinar's reliance on *Duncan* is misplaced and appears opportunistic. The conclusion of the Court of Appeals in *Duncan* is dicta. In *Duncan,* the plaintiff based his claim for commissions on the Michigan Wages and Fringe Benefits Act (MWFBA). M.C.L.A. § 408.471, *et seq.* Thus, the Sixth Circuit's observation that the Michigan Department of Labor should hear *all* wage claims, whether or not they involve the MWFBA, was not essential to a determination of the case. *See United States v. Crawley,* 837 F.2d 291, 292–293 (7th Cir.1988) (statements concerning a principle of law not essential to a determination of the case are *obiter dicta* and lack the force of an adjudication).

### 2.

In any event, the Court respectfully suggests that the Sixth Circuit's conclusion stems from a misinterpretation of Michigan law. No court in Michigan has held that a common law claim for past due employee compensation requires that a claim be filed initially with the Michigan Department of Labor. The Opinion and Order from which the *Duncan* appeal was taken, *Duncan v. Rolm Mil–Spec Computers and Loral Corp.,* No. 89–71336 (E.D.Mich. December 18, 1989), merely held that if a plaintiff relies on the MWFBA then he or she must exhaust the administrative remedies under it.

The Sixth Circuit found support for the sweeping exhaustion requirement in *Cockels v. International Business Expositions,* 159 Mich.App. 30, 406 N.W.2d 465 (1987). However, the plaintiff's claim in *Cockels* sought to enforce a right arising directly under a provision in the MWFBA, M.C.L.A. § 408.483(2), that provided a new statutory remedy for employees who are the victims of retaliatory termination. The decision offers no support for the position that all wage claims, even if they are not based on a provision in the MWFBA, must be filed with the Michigan Department of Labor. *See also Lilley v. BTM Corp.,* No. 87–30088 (E.D.Mich. February 9, 1989) (Harvey, J.).

### V.

In light of the foregoing, Rofin–Sinar's motion for summary judgment as to Conrad's wrongful discharge claim is DENIED. Rofin–Sinar's motion for summary judgment as to Conrad's quantum meruit claim is GRANTED.

SO ORDERED.

---

**4.** *See* Abramson, *Commissions Case Stirs Confusion,* Michigan Lawyers Weekly, Dec. 10, 1990, at 1, col. 4.