*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0119P (6th Cir.)
File Name: 04a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

INTERNATIONAL
BROTHERHOOD OF
BOILERMAKERS, LOCAL
UNION NO. S-251,
    *Plaintiff-Appellant,*

No. 02-6439

*v.*

THYSSENKRUPP ELEVATOR
MANUFACTURING, INC.,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 02-01015—James D. Todd, Chief District Judge.

Argued: March 11, 2004

Decided and Filed: April 23, 2004

Before: MOORE, SUTTON, and FRIEDMAN, Circuit
Judges.[*]

---

[*] The Honorable Daniel M. Friedman, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

---

## COUNSEL

**ARGUED:** Michael T. Manley, BLAKE & UHLIG, Kansas City, Kansas, for Appellant. Edward R. Young, YOUNG & PERL, Memphis, Tennessee, for Appellee. **ON BRIEF:** Michael T. Manley, BLAKE & UHLIG, Kansas City, Kansas, for Appellant. Edward R. Young, Robert J. Leibovich, YOUNG & PERL, Memphis, Tennessee, for Appellee.

---

## OPINION

---

FRIEDMAN, Circuit Judge. This appeal challenges a district court's refusal to enforce an arbitrator's award made in a grievance procedure pursuant to a collective bargaining agreement. The arbitrator ruled that the ground upon which the company had discharged an employee was erroneous and ordered the employee reinstated. The district court refused to enforce the award because the company also had based the discharge upon an alternative ground, which under the collective bargaining agreement had become final when the union had not challenged it before an arbitrator. We **affirm**.

### I

A. The facts are undisputed. The collective bargaining agreement between the appellee Thyssenkrupp Elevator Manufacturing, Inc. ("the Company") and the appellant International Brotherhood of Boilermakers Local Union No. S-251 ("the Union"), permits the Company to discharge employees for "just cause." The company's "Attendance Policy" provides for the imposition of "control points" on employees for unauthorized absence, with increasingly severe

penalties for increased absences ranging from warnings for six to eight points to a three-day layoff for nine points and discharge for ten points.

Article XXI of the collective bargaining agreement contains a four- step grievance procedure for the resolution of "any dispute" between the Company and its employees involving the interpretation or an alleged violation of a specific provision of the agreement. Para. 1. The first two steps involve discussion and negotiation between the employees and their supervisors. Paras. 2-4. If the employee is dissatisfied with the outcome, he may proceed to step three, which involves discussion and negotiation between the Union Grievance Committee and Company representatives. "If the Union Grievance Committee is satisfied with the Company's decision, such decision shall constitute an agreement between the Company and the Union and the Aggrieved employee shall be bound by such agreement." Para. 5.

If, however, the Union disagrees with the Company's decision in the step-three grievance, it "may within ten (10) normal working days from date of written answer from the Company appeal to an impartial arbitrator whose decision shall be final and binding on the Company, the Union and its members, and the aggrieved employee." Para. 6. The agreement further provides: "Any grievance which has been properly presented under the grievance procedure and which is not appealed to the next step by the Union within the designated time limit shall be considered settled on the basis of the Company's decision in the last step through which it was processed." Para. 13. In case of a discharge, any grievance proceeds immediately to step three. Art. XXII, Para. 1.

B. The Company discharged its employee Danny Chandler, effective September 7, 2000 for "Excessive Absenteeism" (it determined he had eleven control points).

On October 18, 2000 the Company wrote Chandler that following an investigation, it appeared that he had "violated Company Rule No. 3, a rule that makes it a dischargeable offense to engage in punching another employee's time card, falsifying any time card, payroll record, or work ticket; knowingly giving false information to anyone whose duty it is to make such records." The letter continued:

This is to notify you that your termination is also being based on your violation of Rule No. 3, effective September 7, 2000.

The Union filed separate step-three grievances with respect to each of these two grounds for discharge. The grievance regarding the September 7 discharge notice was filed on that date; the grievance regarding the October 18 notice was filed on October 23. The Company denied the first grievance on October 18, 2000 and denied the second grievance on November 30, 2000. In denying the first grievance, the Company stated: "All of the details realized as the basis of termination has [sic] been considered, which includes details in attendance as well as his time card violation covered by Rule No. 3. As a result, we have determined that the discharge was justified."

The Union appealed to an arbitrator the Company's denial of the first grievance involving the discharge for excessive absenteeism. The Union, however, did not appeal to an arbitrator the Company's denial of the second grievance relating to the time card misuse.

C. At the hearing before the arbitrator, the Company attempted to raise and present evidence regarding the issue of the second ground of discharge. The Union objected on the ground that "We're not here for anything except excessive absenteeism." The arbitrator responded: "we're here for excessive absenteeism. That's the only grievance that was

presented to me to hear and that's the one I have to stand on." In response to the question "Is it the Union's position that the second grievance is a separate distinct grievance?", the Union responded "Yes."

The arbitrator invalidated the Company's discharge of Chandler "for the excessive absenteeism issue presented in this hearing" because it "did not meet the 'just cause' criteria." The arbitrator ruled that the Company improperly had determined that Chandler had accrued eleven control points and that the proper number was nine, which permitted only a three-day suspension, not a removal. The arbitrator "changed" the removal "to a 3 day time off penalty as outlined in the Attendance policy for 9 assessed points." The arbitrator also ordered "[t]he grievant . . . to be returned to his employment status after the 3-day penalty is recorded, without loss of his seniority or benefits."

The arbitrator further stated:

With respect to the Company's contention that this hearing should also consider the charge of falsifying his time worked record on August 17th which is a violation of Company Rule No 3 is a valid part of this grievance and should be part of this hearing is without merit [sic]. The grievant was not formally notified of these additional charges until October 18, 2000 well after he had been discharged for excessive absenteeism namely September 7, 2000. These charges had not been discussed in the lower steps of the grievance procedure. The charge of falsifying his time record therefore, is "after the fact" and not admissible in this hearing. The only charge that is valid in this hearing is the one as noted on the grievance form that he was discharged for excessive absenteeism.

The Union then filed suit against the Company in the United States District Court for the Western District of Tennessee and moved for summary judgment enforcing the arbitrator's decision. The Company also moved for summary judgment. The district court denied the Union's motion and granted the Company's. The court explained:

Because Defendant discharged Chandler on two separate and distinct grounds, Plaintiff filed two separate and distinct grievances, Plaintiff and Defendant had two separate and distinct step three meeting [sic], and Plaintiff chose only to appeal one grievance, the second grievance became final in accordance with the terms of the collective bargaining agreement.

Order at 9.

The court stated that in these circumstances, "the Arbitrator's decision regarding Chandler's excessive absenteeism is irrelevant." *Id.* at 8.

## II

A. In the first portion of the grievance procedure followed in this case (the step-three procedure), both the Union and the Company treated the two grounds upon which the Company discharged Chandler as separate and distinct disputes. As the district court pointed out, the Union filed "two separate and distinct grievances" and the Union and the Company "had two separate and distinct step-three meeting[s]." The Company wrote separate letters rejecting each of the grievances.

The Union, however, appealed to arbitration only the first of the grievances, relating to the Company's discharge of Chandler for excessive absenteeism. The effect of its failure to appeal the other ground of discharge - the time card

misuse - was to make that ground of discharge final. In the words of the collective bargaining agreement, the grievance relating to that ground of discharge was "considered settled on the basis of the Company's decision in the" step-three grievance, *i.e.*, that "nothing" had been presented "to substantiate that Mr. Chandler's time record was not falsified."

Thus, when the grievance related to Chandler's alleged excessive absenteeism came before the arbitrator for resolution in step four of the grievance procedure, the case was in the following posture: the Company had rejected the other grievance involving the alternative ground for discharge and, because the Union had not taken that grievance to arbitration, the Company's rejection of it had become final. Accordingly, there was outstanding a final determination by the Company discharging Chandler for time card misuse. Therefore, there was nothing the arbitrator could do with respect to the only ground of discharge that was before him - for excessive absenteeism - that could change Chandler's discharge, which had become final and unreviewable.

There was, therefore, no live controversy remaining with respect to the validity of Chandler's discharge. Even if the arbitrator set aside the excessive absenteeism ground for that discharge, the discharge still would remain in effect because of the unchallenged alternative ground upon which it also rested. In traditional terms, there was no longer any case or controversy regarding the discharge, and any question regarding its validity was moot.

In comparable circumstances courts have recognized that there was nothing for them to decide where their decision on the issue before them would have no impact or effect on the rights of the parties. Thus, in *Carras v. Williams*, 807 F.2d 1286 (6th Cir. 1986), Carras filed suit in a federal court under 42 U.S.C. § 1983 to enjoin the Justices of the Michigan

Supreme Court, two state trial judges and others from participating in a state court suit in which he was a party. The court of appeals ruled that "[w]hen the United States Supreme Court denied Carras' petition for writ of *certiorari*, however, the Michigan trial court judgment became final and the state court suit was terminated. Because there is no longer a state court proceeding from which to enjoin the named defendants' participation, the relief which Carras has sought can no longer be given by a federal court. Therefore, this aspect of Carras' suit has become moot." *Id.* at 1289 (citations omitted).

Similarly, in *Rosskamp v. Kerr McGee Corp.*, 992 F.2d 557 (5th Cir. 1993), the Fifth Circuit affirmed the district court's holding that the employer was statutorily immune from liability for a tort claim. The Fifth Circuit then held: "Our agreement with the district court on statutory employer immunity renders moot Phillips' cross-appeal arguing alternative grounds for tort immunity." *Id.* at 557. In *Kaminski v. United States*, 339 F.3d 84 (2d Cir. 2003), the Second Circuit ruled in a federal habeas corpus proceeding arising out of a federal criminal conviction, that a "certificate of appealability does not permit review of . . . alternative bases for the district court's decision. And, ordinarily, unless a certificate encompasses all of the grounds for a court's ruling on an issue, an appeal that challenges only some of the district court's grounds will be moot." *Id.* at 85.

These cases all involved different facts and different issues. What they have in common with the present case, however, is the recognition that "[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (internal quotations marks omitted); *see also Bowman v. Corr. Corp. of America*, 350 F.3d 537, 550 (6th Cir. 2003).

Here, as we have shown, the arbitrator's rejection of the excess absenteeism ground for discharge could not affect the discharge itself, which also rested on another unchallenged ground. In determining the validity of the excess absenteeism ground for discharge, the arbitrator thus performed a futile act. The district court so recognized when it stated that, because the Company's alternative ground for discharge was not appealed and became final, "the arbitrator's decision regarding Chandler's excessive absenteeism is irrelevant."

B. The Union invokes cases that stress the limited role the courts have in reviewing arbitrators' decisions in proceedings under collective bargaining agreements. *See, e.g., United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("[T]he courts play only a limited role when asked to review the decision of an arbitrator."); *id.* at 38 ("Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."). It argues that under these principles the district court was required to accept the arbitrator's rulings that no issue involving the alternative ground of discharge was properly before him and that because the Company erroneously determined that Chandler had eleven control points rather than nine, his discharge based on that determination was improper and the Company therefore was required to reinstate him after suspending him for three days.

Those cases might be relevant if the challenge to the arbitrator's award here related to his evaluation of the merits of the alternative ground of discharge or even to his refusal to consider the merits of that ground. Those would be matters for the arbitrator. Here, however, the arbitrator's error was in deciding the merits of the excessive absenteeism ground for discharge in a situation where that decision could not affect the rights of the parties. That is not a matter that the collective bargaining agreement commits to the arbitrator.

The cases dealing with the limited scope of judicial review of arbitrators' decisions are irrelevant to that issue.

The Union also relies on the Seventh Circuit's decision in *Chrysler Motors Corp. v. International Union, Allied Industrial Workers, Local 793*, 2 F.3d 760 (1993), as authority that the district court should have enforced the arbitrator's award in this case. The facts in that case, which is not binding precedent in this court, are sufficiently different from those in the present case that that case is not persuasive authority here.

In *Chrysler*, the Company discharged a male employee for sexually harassing a female employee. The Union filed a grievance challenging the discharge, and the arbitrator, concluding that the discharge was too severe a penalty for the employee's single transgression, reduced it to a thirty-day suspension. Although the Company presented evidence to the arbitrator that the employee had committed similar transgressions on four other occasions, the arbitrator refused to consider that evidence because the Company became aware of it only after it had discharged the employee.

The Company then in effect reinstated the employee for one day and discharged him again for the four other delinquencies. The court of appeals upheld both the Company's reinstatement of the employee and its subsequent discharge of him "pursuant to the evidence its post-discharge investigation had uncovered," which it described as "entirely appropriate." 2 F.3d at 764.

In *Chrysler* there were two separate discharges, the second made after the Company had reinstated the employee for a day, and only the first of which was the subject of a grievance. In the present case, in contrast, there was only a single discharge, on September 7, 2000, although the Company subsequently provided an additional ground for that

action.   The Company's notification to Chandler of the second ground for discharge informed him that his "termination is also being based on [his] violation of Rule No. 3, effective September 7, 2000." The present case thus involved two different grounds for a single discharge, each of which was the subject of a separate grievance, and one of which became final when the Union did not appeal it to the arbitrator.  *Chrysler*, however, involved two separate and different discharges, based upon different grounds, only the first of which was the subject of a grievance.  *Chrysler* simply is not relevant to the issue we decide in this case.

## CONCLUSION

The judgment of the district court is affirmed.