*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF DETROIT,

        Plaintiff-Appellee,

v

NATIONWIDE RECOVERY, INC., and
METROTECH AUTO SALES, LLC,

        Defendants-Appellants,

and

GPR PROPERTIES, LLC, and DETROIT
LANDHOLDINGS 1301 LEVERETTE, LLC,

        Defendants.

UNPUBLISHED
March 18, 2021

No. 348814
Wayne Circuit Court
LC No. 18-006195-CZ

Before: STEPHENS, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

In this public-nuisance action involving the towing of stolen vehicles, defendants Nationwide Recovery, Inc. ("Nationwide"), and Metrotech Auto Sales, LLC ("Metrotech") (collectively "defendants"[1]), appeal as of right the trial court's judgment awarding a permanent injunction against Nationwide to plaintiff, city of Detroit, following a bench trial. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of defendant Nationwide's vehicle-towing practices within plaintiff city. This is not the first action between these parties involving the disputed towing practices. In

---

[1] At the stipulation of the parties, defendants GPR Properties, LLC, and Detroit Landholdings 1301 Leverette, LLC, were dismissed as parties before trial, and neither of those defendants is a party to this appeal.

a prior federal action, Nationwide alleged that plaintiff had deprived it of due process of law by summarily suspending (and seizing) its permit to tow vehicles within the city of Detroit. Plaintiff filed counterclaims against Nationwide as well as third-party claims against Metrotech and various "officers, owners or agents of" Nationwide, including its acting manager, Louay M. Hussein ("Louay"). All of plaintiff's counterclaims and third-party claims in the federal action were voluntarily dismissed without prejudice, in October 2017.

Plaintiff subsequently instituted this action in state court, seeking abatement of the disputed towing practices. As aptly summarized by the trial court:

> In pertinent part, the Complaint alleged that the [plaintiff] City had uncovered significant evidence showing that Nationwide was involved in . . . vehicle theft. The Detroit Police Department, hereinafter DPD, learned that . . . Nationwide was recovering . . . vehicles at an alarming rate under highly questionable circumstances. Vehicles were recovered before the owners knew of the theft or reported the vehicle stolen. Nationwide was recovering significantly more newer models than other tow companies. Nationwide was recovering vehicles without the presence of police officer, contrary to DPD rules. Sergeant James McMahon, hereinafter McMahon, [who is a] Highland Park Police Officer and deputized Wayne County Sheriff, frequently signed off on recoveries by Nationwide without traveling to the scene. McMahon delayed sending required notifications regarding vehicle recovery to the Law Enforcement Information Network System, hereinafter LEIN, resulting in delay and notifying owners of the recovery of the vehicles, and benefiting Nationwide by accruing additional storage fees.

> Plaintiff's theory of the case at trial was that:

> (1) Nationwide[2] had "acted in concert" with deputies and officers of the Wayne County Sheriff's Office (WCSO) and the Highland Park Police Department to engage in the disputed towing practices within plaintiff city;

> (2) Plaintiff asserted that such practices "actively interfere[d] with the efforts of the DPD to combat car theft in" plaintiff city and "routinely violate[d] private and constitutional rights of [its] citizens";

> (3) The city theorized that Nationwide engaged in the disputed towing practices to enrich itself, reaping "millions of dollars in improper towing and storage fees," while cooperating with and compensating "car thieves";

> (4) Plaintiff argued that neither the WCSO nor the Highland Park Police Department had jurisdiction to authorize the towing of allegedly stolen vehicles within plaintiff city; and

---

[2] At the stipulation of the parties, plaintiff's claims against defendant Metrotech were dismissed before trial.

(5) Finally plaintiff put forth evidence that the disputed towing practices contravened "the fundamental rule that public resources cannot be used to enrich a private entity."

Following the bench trial, the trial court found that Nationwide's disputed towing practices constituted a public nuisance and that abatement by injunction was necessary. In pertinent part, the trial court reasoned:

> [Plaintiff] has the burden of proof on its claims. It must demonstrate[] a violation of the City Code Section 37-1-2 and/or common law nuisance by a preponderance of the evidence.

> No better definition of public nuisance has been, suggested than an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights to all citizens. [*Garfield Twp v Young*, 348 Mich 337, 341-342; 82 NW2d 876 (1957)]. Public nuisance does not require that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right. [*Id*. at 342.] Public nuisance includes (l) conduct that significantly interferes with public health, safety, peace, comfort or convenience; (2) conduct that is prescribed by law; and (3) conduct of a continuing nature that produces a permanent or long lasting affect, and as the actor knows or has reason to know, has a significant affect on public rights. [*Wagner v Regency Inn Corp*, 186 Mich App 158, 163; 463 NW2d 450 (1990).]

> Upon receiving information that a vehicle previously reported as stolen has been recovered, the police agency shall immediately report the fact of the recovery through the Law Enforcement Information Network. MCL 257.252. An agency is responsible for the accuracy and completeness of any record it enters into LEIN. 1981 AACS; 2009 AACS Rule 28.5401(1).

> * * *

> The City is claiming that Nationwide is working with [the WCSO] in a conspiracy to charge excessive fees so that Nationwide can pay car thieves fees for tips. . . . It is also claimed Nationwide is working with the [WCSO] and Highland Park Police to engage in conduct that actively interferes with the DPD's effort to investigate car theft and violates 4th Amendment constitutional rights of Detroit citizens.

> * * *

> The City has failed in its burden of proof to demonstrate Louay knew or Louay was working with known car thieves to recover stolen vehicles.

> The City is also seeking an injunction against Nationwide to use Wayne County Sheriff deputies or officers like McMahon, who have been specially deputized to work with the Sheriff's Department to recover vehicles with Nationwide in Detroit. The claim is that these Wayne County Sheriff deputies are interfering with the investigation of car theft in Detroit. This Court—and this is a

-3-

Violation of City Code 37-1-2 and constitutes a nuisance. This Court agrees. As a general rule these deputies go out and recover vehicles and conduct no investigation. And occasionally violate constitutional rights by seizing vehicles on private property without the owner's consent or obtaining a search warrant. . . .

It is deeply troubling that Wayne County Sheriff deputies ignore evidence holds with respect to vehicles that are recovered by them and impounded by Nationwide. They are clearly interfering with the investigations of car thefts in the City of Detroit. Since no investigation is generally done by the recovering sheriff deputies, it is impossible to determine how much evidence has been lost because of these recoveries.

Nationwide by the use of Wayne County . . . deputies engaged in an offensive trade that is offensive, hurtful, in violation of City Code Section 37-1-2, and is a public nuisance that interferes with public safety, peace, comfort and convenience.

What is so troubling about this is that neither the Wayne County Sheriff's Department or the Highland Park Police Department seem to care. There is no Wayne County Sheriff or Highland Park Police Department oversight or supervision of McMahon, [WCSO Corporal Russell] Herr or anyone else that recovers vehicles in Detroit for Nationwide. There is no attempt to make certain that there are officers on the scene. There is a complete failure to make certain that recoveries are timely reported in LEIN. The impact is significant to the owners of the vehicle because the later they are notified the more the storage fees accrue.

In addition, McMahon's entries are inaccurate and false when he is not the recovering officer.

As I pointed out in my findings of fact, that affects a subsequent investigation by Detroit as to what the recovering officer saw at the scene.

Due to the efforts of the Wayne County Sheriff deputies and reserve officers and Highland Park police officers and reserve officers and Nationwide, serious questions arise with respect to whether evidence has been tampered with, whether evidence has been lost and whether the chain of custody is destroyed.

Moreover, it is astounding to this Court that no one in the Wayne County Sheriff's Department cares about the tow charges of Nationwide, which are significantly more than allowed under the contract with Martin Towing Inc., and the subcontract that Martin Towing Inc., has with Nationwide.

* * *

Nationwide exceeds these charges on almost every case and no one at the Wayne County Sheriff's Office cares about it or reviews what is occurring or takes any corrective action.

The Court as I pointed out in my findings of fact there's a history of this, because when Nationwide was participating in the pilot program with the DPD, it also overcharged in violation of the ordinance and only refunded money if people complained about it.

\* \* \*

Turning to the issue of whether this Court should issue an injunction enjoining Nationwide from using anyone deputized by the Wayne County Sheriff's Department to recover vehicles in Detroit. The first factor is the public interest if an injunction issues. There is clearly a public interest. Since the Wayne County Sheriff deputies generally do not conduct any investigation and ignore . . . evidence holds. It is in the public interest that they not perform these recoveries in Detroit.

The next factor is the harm to the City if an injunction is not issued against the harm to Nationwide if an injunction is issued. The harm to the City is significant because investigations of stolen cars and other vehicles are not being conducted by the recovering officers. Evidence is not being properly reserved. There is a harm to Nationwide because CATS stopped its officers from being used in recoveries by Nationwide . . . . It's not clear from this record if the DPD would not work with Nationwide to recover stolen vehicles.

However, the greater harm is to the City which is losing the opportunity to investigate car theft and preserve evidence.

The City has clearly demonstrated that is entitled to an injunction because it prevailed on the merits that Wayne County deputies have interfered with preserving evidence and failed to conduct investigations of stolen vehicles when they are recovered.

Finally, there is irreparable injury because investigations are not conducted and evidence is not discovered and preserved.

Throughout these proceedings Nationwide has argued that the nuisance does not affect everyone. Nationwide is wrong. Just about every vehicle recovered by a Wayne County Sheriff is either not investigated or evidence holds are ignored. Anyone whose vehicle is stolen is affected by this.

For this reason this Court will grant an . . . injunction enjoining Nationwide from using any Wayne County deputies or anyone deputized by the Wayne County Sheriff's Department to recover vehicles for Nationwide in the City of Detroit.

The trial court subsequently entered such a judgment , under which Nationwide was "permanently enjoined from recovering or impounding, through the Wayne County Sheriff or any agent, employee or individual acting as or on behalf of a deputy Wayne County sheriff, any stolen or suspected stolen vehicles in the City of Detroit."

Defendants filed a motion for a new trial, arguing that the trial court's decision was against the great weight of the evidence, based on clearly erroneous factual findings, and founded on various legal errors. Defendants also filed a motion to stay or modify the injunction against Nationwide pending resolution of the instant appeal. Following a motion hearing, the trial court denied both motions. This appeal ensued.[3]

## II. ANALYSIS

### A. STANDARDS OF REVIEW AND PRINCIPLES OF INTERPRETATION

On appeal, defendants raise several claims of error, which we review under several standards. "The circuit court's findings of fact . . . following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013). Moreover, "[n]uisance-abatement proceedings brought in the circuit court are generally equitable in nature," and "[w]e review de novo the circuit court's equitable decisions, but review for clear error the findings of fact supporting those decisions." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 270; 761 NW2d 761 (2008). "A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made." *In re AGD*, 327 Mich App 332, 338; 933 NW2d 751 (2019). In reviewing a trial court's factual findings, "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

It is ultimately a question of fact whether a public nuisance exists under "the facts peculiar to that particular case." *Garfield Twp*, 348 Mich at 342. On the other hand, it is a question of law, reviewed de novo, whether a party has appellate standing, *Manuel v Gill*, 481 Mich 637, 642-643; 753 NW2d 48 (2008), whether subject-matter jurisdiction exists, *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 725; 909 NW2d 890 (2017), and whether a given issue is moot, *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018).

"A court's refusal to enter a stay is reviewed for an abuse of discretion," *Foster v Foster*, 505 Mich 151, 165-166; 949 NW2d 102 (2020), as is a trial court's decision concerning a motion for a new trial, *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013), or a motion for costs and fees under MCR 2.504(D), see *In re Waters Drain Drainage Dist*, 296 Mich App 214, 219; 818 NW2d 478 (2012); *McKelvie v Mount Clemens*, 193 Mich App 81, 84-86; 483 NW2d 442 (1992). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 707; 950 NW2d 502 (2019) (quotation marks and citation omitted). A trial court's decision regarding a motion for sanctions is also reviewed for an abuse of discretion, while the trial court's related factual findings—including any "finding of frivolousness"—are reviewed for clear error. *Id.* (quotation marks and citation omitted)

---

[3] Defendants also filed a motion in this Court to stay the trial court's judgment pending appeal, which this Court denied. *Detroit v Nationwide Recovery Inc*, unpublished order of the Court of Appeals, entered August 22, 2019 (Docket No. 348814).

We review de novo the proper interpretation and application of statutes, ordinances, and court rules. *Garrett v Washington*, 314 Mich App 436, 450; 886 NW2d 762 (2016); *Gmoser's Septic Serv, LLC v East Bay Charter Twp*, 299 Mich App 504, 509; 831 NW2d 881 (2013). "[T]he rules governing statutory interpretation apply with equal force to a municipal ordinance," *Bonner v City of Brighton*, 495 Mich 209, 222; 848 NW2d 380 (2014), and court rules, *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 324; 900 NW2d 680 (2017). As our Supreme Court explained in *Sun Valley Foods Co v Ward*, 460 Mich 230, 236-237; 596 NW2d 119 (1999):

> The rules of statutory construction are well established. The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. This task begins by examining the language of the statute itself. The words of a statute provide the most reliable evidence of its intent... If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent.

> In interpreting the statute at issue, we consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. As far as possible, effect should be given to every phrase, clause, and word in the statute. [Quotation marks and citations omitted.]

## B. PUBLIC NUISANCE

Defendants first argue that the trial court erred when it concluded that the disputed towing practices constituted a common-law public nuisance. Defendants also argue that the trial court erred by holding that those practices violated Detroit City Code § 37-1-2. We disagree in both regards.

"Nuisance is the great grab bag, the dust bin, of the law." *Awad v McColgan*, 357 Mich 386, 389; 98 NW2d 571 (1959), overruled in part on other grounds *Mobil Oil Corp v Thorn*, 401 Mich 306, 310, 312 (1977). Indeed, past nuisance actions have concerned a wide variety of factual scenarios, including the use of personalty, *State ex rel Dowling v Martin*, 314 Mich 317, 324; 22 NW2d 381 (1946) (automobile used in illicit gambling scheme), legitimate business activities on private realty, *Garfield Twp*, 348 Mich at 342-343 (operation of a junk yard), negative publicity, *Adkins v Thomas Solvent Co*, 440 Mich 293, 306; 487 NW2d 715 (1992) (publicity concerning contaminated ground water), riparian rights, *State ex rel Muskegon Booming Co v Evart Booming Co*, 34 Mich 462, 473-474 (1876) (use of a riverbed), widespread criminal activity, *State ex rel Wayne Co Prosecutor v Bennis*, 447 Mich 719, 733; 527 NW2d 483 (1994) (ongoing street prostitution in certain neighborhoods), unpleasant odors, *Grand Rapids v Weiden*, 97 Mich 82, 83-84; 56 NW 233 (1893) ("intolerable stench" emanating from a rendering plant), violations of zoning ordinances, *Travis v Preston*, 249 Mich App 338, 351; 643 NW2d 235 (2002) (pig farm allegedly operated contrary to local zoning), the publicly sanctioned erection of structures, *Kilts v Bd of Supervisors of Kent Co*, 162 Mich 646, 653; 127 NW 821 (1910) (water tower erected on county farmland), noise levels, *Capitol Props Group, LLC v 1247 Ctr St, LLC*, 283 Mich App 422, 429; 770 NW2d 105 (2009) (nightclub operated near residential dwellings), public roadways,

*Stremler v Michigan Dept of State Highways*, 58 Mich App 620, 622; 228 NW2d 492 (1975) (wrongful-death action alleging defective road design, construction, and maintenance), and the public display of sexually explicit images, *Bloss v Paris Twp*, 380 Mich 466, 470; 157 NW2d 260 (1968) (explicit films at drive-in theater on screen visible to public).

Nuisances are generally classified as nuisances per se, nuisances in fact, or negligent nuisances. *Wagner v Regency Inn Corp*, 186 Mich App 158, 164; 463 NW2d 450 (1990). "A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances," "a nuisance in fact is a nuisance by reason of circumstances and surroundings," and a negligent nuisance is a variety of "nuisance in fact . . . created by the landowner's negligent acts, that is, a violation of some duty owed to the plaintiff which results in a nuisance." *Id*.

Plaintiff has pled a common-law public-nuisance claim, not a statutory nuisance claim which merely requires that there be a violation of a specific statute. See *Lima Twp v Bateson*, 302 Mich App 483,493; 838 NW2d 898 (2013). The violation of a provision of positive law *alone* is insufficient to find a nuisance subject to abatement. See *Garfield Twp*, 348 Mich at 340-341 ("something more than mere illegality is required") (quotation marks and citation omitted).

"Historically, Michigan has recognized two distinct versions of nuisance, public nuisance and private nuisance." *Adkins*, 440 Mich at 302. On the topic of "public" nuisance—the variety at issue here—in *Garfield Twp*, 348 Mich at 341-342, our Supreme Court observed:

> No better definition of a public nuisance has been suggested than that of an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all . . . . The term comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community or the comfort or convenience of the general public.
>
> To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several. . . . It is not necessary, however, that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right. [Quotation marks and citation omitted.]

Accord Restatement, § 821B(1) ("A public nuisance is an unreasonable interference with a right common to the general public."). Public nuisances are properly abated by way of injunctive relief. *Bloss*, 380 Mich at 473 ("where the facts disclosed by the record show the existence of a public nuisance an injunction would lie").

Citing in support *Wagner*, 186 Mich App at 163, defendants argue that the trial court erred by concluding that the disputed towing practices were a common-law public nuisance because the court failed to make the allegedly "required" finding that those towing practices resulted in a "significant" interference with public health, safety, peace, comfort, or convenience. Defendants misinterpret *Wagner*'s relevant holding. In *Wagner*, this Court recognized:

> A public nuisance is an unreasonable interference with a right common to the general public." The term 'unreasonable interference' *includes*: (1) conduct that significantly interferes with public health, safety, peace, comfort, or convenience;

(2) conduct that is prescribed by law; (3) conduct of a continuing nature that produces a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect on public rights. [*Wagner*, 186 Mich App at 163, citing *Sanford v Detroit*, 143 Mich App 194, 199-200; 371 NW2d 904 (1985), citing Restatement, § 821B (emphasis added).]

In other words, "conduct that significantly interferes with public health, safety, peace, comfort, or convenience" is just *one* type of conduct that qualifies as an "unreasonable interference" for purposes of a public nuisance claim. Thus, defendants are incorrect in asserting that such a finding was necessary to find a public nuisance in this case. See *Wagner*, 186 Mich App at 163; see also *Garfield Twp*, 348 Mich at 342 (observing that a given "activity" can constitute a common-law public nuisance if it is "harmful to the public health," "create[s] an interference in the use of a way of travel," or "prevent[s] the public from the peaceful use of their land and the public streets"); Restatement, § 821B(2) (noting that an array of different "[c]ircumstances . . . may sustain a holding that an interference with a public right is unreasonable").

Defendants also argue that the trial court erred because "no standard of law" supports its holdings that the disputed towing practices are a common-law public nuisance and violate Detroit City Code § 37-1-2. In support, defendants rely on the following excerpt from Restatement, § 821B, comment *e*: "If a defendant's conduct in interfering with a public right does not come within one of the traditional categories of the common law crime of public nuisance or is not prohibited by a legislative act, the court is acting without an established and recognized standard."

Defendants take that portion of the Restatement commentary out of context. This commentary addressed nuisance claims where damages are at issue. "There are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable." Restatement, § 821B, comment *i*.

In relevant part, the comment cited by defendants, Restatement, § 821B, comment *e*, states:

> If a defendant's conduct in interfering with a public right does not come within one of the traditional categories of the common law crime of public nuisance or is not prohibited by a legislative act, the court is acting without an established and recognized standard. . . . In view of the potentially widespread *damage liability* for a public nuisance, the court will give attention to the possibility that the defendant was not aware of the injurious character of his conduct and will usually confine the tort liability for damages to cases in which the defendant's conduct was of a continuing nature or produced a permanent or long-lasting effect or its detrimental effect on the public right was significant and he knew or had reason to know (see § 12) of that effect. *In the awarding of an injunction less weight may be placed on the aspect of knowledge*. [Emphasis added.]

In this case, plaintiff sought and was awarded abatement by injunction, not damages. Also, Nationwide cannot rationally claim that, before the injunction was entered against it, it lacked reasonable notice that plaintiff city viewed the disputed towing practices as both an injurious public nuisance and contrary to Detroit City Code § 37-1-2. On the contrary, as defendants admit

in their brief on appeal, this is the second lawsuit involving such allegations. Thus, we are unpersuaded by defendants' claim of error under Restatement, § 821B, comment *e*.

Defendants also argue that the trial court misconstrued and misapplied Detroit City Code § 37-1-2, which provides:

> No person[4] shall permit on his *premises*, within the city limits, of which he may be the occupant or agent having charge thereof, *the exercise of any unwholesome or offensive trade or calling*, or permit any building, sewer or other thing whatsoever to remain on such premises until the same shall in any manner become offensive, hurtful, dangerous or unwholesome to the neighborhood or travelers. [Emphasis added.]

In particular, defendants contend that the trial court erred by holding that the disputed towing practices constituted an "unwholesome or offensive trade or calling" exercised on Nationwide's "premises" for purposes of § 37-1-2. We disagree.

To the extent that defendants argue that the trial court ignored Detroit City Code § 37-1-2's use of the phrase "on his premises," thereby rendering that phrase nugatory, defendants simply misstate the record. In rejecting that same argument when it was raised in Nationwide's motion for a new trial, the trial court reasoned as follows:

> Nationwide argues that this Court disregard the requirement that Defendant's Ordinance 37-1-2 required the nuisance to take place, quote, "On the premises of the defendant."
>
> This Court disagrees. The Court found that Nationwide and the Wayne County Sheriff's Department were interfering with investigations of stolen vehicles, trespassing, and unconstitutionally seizing vehicles from private property.
>
> Nationwide trucks were dispatched from its yard. Many contacts to the Wayne County Sheriff's Department were made from Nationwide's yards and the vehicles that were recovered were stored at Nationwide's yards.
>
> These things all occurred on the premises and constitute violation of the ordinance.

Otherwise, the parties cite no binding authority construing "on his premises" in the Detroit City Code § 37-1-2, and we are aware of no such precedent.[5]

---

[4] "Person means an individual, association, firm, partnership, political body, and corporate body." Detroit City Code § 1-1-2(a).

[5] In *Brady v Detroit Steel & Spring Co*, 102 Mich 277, 279; 60 NW 687 (1894), which involved a private nuisance action, our Supreme Court quoted and applied what appears to have been a

None of the operative words or phrases in Detroit City Code § 37-1-2 are defined by the ordinance. "An undefined statutory term must be accorded its plain and ordinary meaning. A lay dictionary may be consulted to define a common word or phrase that lacks a unique legal meaning. A legal term of art, however, must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). In discerning such meanings, terms and phrases should be construed in view of their context. See *In re Medina*, 317 Mich App 219, 233; 894 NW2d 653 (2016) (noting that statutory text must not be construed "in a vacuum, heedless of context").

The terms "unwholesome," "offensive," "trade," and "calling" are common words that we construe by their plain and ordinary meaning. Considering the terms "trade and calling" in context, a dictionary is unnecessary to ascertain their meaning here. See *Bloomfield Twp v Kane*, 302 Mich App 170, 175; 839 NW2d 505 (2013) ("recourse to dictionary definitions is unnecessary when the Legislature's intent can be determined from reading the statute itself") (quotation marks and citation omitted). In our view, the operation of a towing company like Nationwide clearly falls within the ordinary meaning of the term "trade" for purposes of Detroit City Code § 37-1-2. Indeed, the parties offer no argument to the contrary, seeming to tacitly agree that Nationwide is engaged in a "trade" under that provision.

Our analysis focuses on the meaning of the words "offensive" and "loathsome." In order to afford those terms distinct meaning and purpose within the provision, we find it helpful to consult a dictionary. In pertinent part, *Merriam-Webster's Collegiate Dictionary* (11th ed), defines the adjective "offensive" as "giving painful or unpleasant sensations" or "causing displeasure or resentment[.]" As relevant here, that same dictionary defines the adjective "unwholesome" as "detrimental to physical, mental, or moral well-being: UNHEALTHY"; "CORRUPT, UNSOUND"; or "offensive to the senses: LOATHSOME[.]" *Id*.

In light of such definitions, the trial court did not clearly err when it determined that Nationwide's disputed towing practices fell within the plain meaning of the phrase "offensive trade" under Detroit City Code § 37-1-2. The record evidence demonstrated that, under the direction of Louay, Nationwide systematically engaged in a highly aggressive car-recovery business model in plaintiff city, actively "hunting" for stolen, "suspected" stolen, and "abandoned" vehicles. In doing so, it charged far-above-market rates—requiring citizens to pay in cash to redeem impounded vehicles—while offering cash incentives to its drivers based on the volume of vehicles recovered.

Foreseeably, this led to improper practices in the field. Although the trial court found that plaintiff failed to prove any *knowing* collusion between Louay and known car thieves, the parties do not contest the trial court's finding that at least one of Nationwide's drivers, Kenneth "Turbo" Christian, "clearly" paid individuals he knew to be car thieves for tips regarding where stolen

---

precursor of Detroit City Code § 37-1-2. However, *Brady* is not helpful here; it did not meaningfully construe the text at issue here or involve facts at all similar to those at bar.

vehicles could be located.[6]  In effect, this offered an extra financial incentive for car thieves to steal vehicles and dump them in plaintiff city.  Moreover, it is undisputed that many of the vehicles recovered by Nationwide were located on private property in places not visible from the street, and some were inside buildings, such as a commercial garage.  This was strong circumstantial evidence that such vehicles were located in one of two improper ways: either by paying car thieves for tips or by trespassing on private property in search of stolen vehicles.  It was a reasonable inference that Nationwide's drivers performed warrantless searches with knowledge and encouragement of law enforcement that could not have been performed by the police directly without violating the Fourth Amendment.  That practice therefore, infringed on and offended the constitutional rights of the affected citizenry.  See *Detroit Edison Co v Stenman*, 311 Mich App 367, 387; 875 NW2d 767 (2015), citing *People v McKendrick*, 188 Mich App 128, 141-143; 468 NW2d 903 (1991) (holding that the Fourth Amendment proscribes unreasonable searches conducted on behalf of the government by a private citizen so long as "the police . . . instigated, encouraged, or participated in the search," and "the individual . . . engaged in the search with the intent of assisting the police in their investigative efforts").  See also *Lebron v Nat'l R Passenger Corp*, 513 US 374, 397; 115 S Ct 961; 130 L Ed 2d 902 (1995) ("It surely cannot be that government, state or federal, is able to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form.  On that thesis, *Plessy v Ferguson*, 163 US 537 (1896), can be resurrected by the simple device of having the State of Louisiana operate segregated trains through a state-owned Amtrak.").

Moreover, as demonstrated by Sergeant McMahon's conduct, Nationwide's business model provided a clear financial incentive for law enforcement to condone and participate in such highly questionable towing practices in plaintiff city.  Aside from the $75 administrative fee that each recovered vehicle reaped for the recovering police agency, such agencies also benefited from seizing vehicles (for little or no cost) and by purchasing recovered vehicles at auction.  These financial incentives are the only logical reason for Highland Park to pay officers to regularly perform work outside of Highland Park, under the authority of the county sheriff in Detroit, a neighboring city with a robust police department.  Indeed, the incentive for Highland Park was so strong that it persisted in such conduct after the DPD began to actively investigate Sergeant McMahon and during the pendency of the instant lawsuit.

The trial court received evidence that also demonstrated that there were many instances where neither Nationwide nor the recovering police agency took the necessary steps to ensure that the owners of impounded vehicles were timely notified of their recovery.  As a result, owners frequently incurred—and Nationwide accrued—extensive, unnecessary vehicle-storage fees, which were billed at $20 a day.  This was surely loathsome to vehicle owners.  Additionally, because of such delays and improper LEIN practices on behalf of the police officers who cooperated with Nationwide, its vehicle recoveries frequently interfered with the DPD's ability to detect and investigate crime.  The reported delays were also generally contrary and offensive to state law.  See MCL 257.252 ("Upon receiving information that a vehicle previously reported as

---

[6] When questioned at trial concerning the disputed towing practices and his conduct as a Nationwide employee, Christian repeatedly asserted his Fifth Amendment privilege against self-incrimination.

-12-

stolen has been recovered, the police agency shall immediately report the fact of the recovery through the law enforcement information network."); MCL 257.252a(5)(b) (providing that "[a] police agency that has received a vehicle taken into custody as abandoned shall," "[w]ithin 24 hours after the vehicle is taken into custody, enter the vehicle as abandoned into the law enforcement information network, and notify the secretary of state through the law enforcement information network that the vehicle has been taken into custody as abandoned"); MCL 257.252d(3)-(5) (providing that a LEIN entry concerning the recovery of a vehicle *not* received by the police as abandoned under MCL 257.252a must generally be entered "not less than 7 days after authorizing the removal" of the vehicle and that, in any case, "the towing agency or custodian" of the vehicle must notify the police agency if the vehicle is left unredeemed after a certain time period).

For those reasons, we cannot conclude that the trial court erred or clearly erred by finding that Nationwide's disputed towing practices constituted an "offensive trade" for purposes of Detroit City Code § 37-1-2. On the contrary, it seems that those trade practices, which were conducted at least in part on Nationwide's "premises" in plaintiff city, are aptly described as "offensive." As evidenced by the testimony of numerous individuals who had dealings with Nationwide in plaintiff city, its trade practices did, in fact, offend the local citizenry and police, causing a great deal of both displeasure and resentment.

Nor are we definitely and firmly convinced that the trial court made a mistake when it found that the disputed towing practices constituted a common-law public nuisance. For the reasons previously noted, the disputed towing practices unreasonably interfered with several rights common to the general public, including the right to be secure from unreasonable searches and seizures under both the Fourth Amendment and Const 1963, art 1, § 11. Those towing practices are also proscribed by law under Detroit City Code § 37-1-2, are of a continuing nature with potentially long-lasting effects (concerning the detection and prevention of crime), and significantly interfere with the DPD's ability to safeguard the public safety and peace, which is an interest common to the general public. Thus, the trial court did not err by holding that such practices constituted a common-law public nuisance subject to abatement. See Restatement, § 821B; *Garfield Twp*, 348 Mich at 341-342; *Wagner*, 186 Mich App at 163.

## C. SEPARATION OF POWERS

Nationwide next argues that the trial court's holding impermissibly violated separation-of-powers principles. We disagree.

As an initial consideration, we reject plaintiff's contention that defendant Nationwide lacks standing to raise this issue on appeal. Nationwide qualifies as an "aggrieved" party with appellate standing here because the judgment appealed visited upon it a "concrete and particularized injury"—i.e., a permanent injunction preventing it from engaging in certain profitable business practices. See *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006).

It is a distinct question, of course, whether Nationwide's instant claim of error is substantively meritorious. Nationwide argues that the trial court violated separation-of-powers principles by holding that the WCSO is required to perform an "investigation" regarding recovered

vehicles before authorizing Nationwide to impound them. In particular, Nationwide contends that the trial court's holding infringes on the Legislature's policymaking prerogative by, in essence, judicially adding such a requirement to MCL 257.252d(1), which provides:

A police agency or a governmental agency designated by the police agency may provide for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last-titled owner of the vehicle in any of the following circumstances:

(a) If the vehicle is in such a condition that the continued operation of the vehicle upon the highway would constitute an immediate hazard to the public.

(b) If the vehicle is parked or standing upon the highway in such a manner as to create an immediate public hazard or an obstruction of traffic.

(c) If a vehicle is parked in a posted tow away zone.

(d) *If there is reasonable cause to believe that the vehicle or any part of the vehicle is stolen*.

(e) *If the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime*.

(f) If removal is necessary in the interest of public safety because of fire, flood, storm, snow, natural or man-made disaster, or other emergency.

(g) If the vehicle is hampering the use of private property by the owner or person in charge of that property or is parked in a manner that impedes the movement of another vehicle.

(h) If the vehicle is stopped, standing, or parked in a space designated as parking for persons with disabilities and is not permitted by law to be stopped, standing, or parked in a space designated as parking for persons with disabilities.

(i) If the vehicle is located in a clearly identified access aisle or access lane immediately adjacent to a space designated as parking for persons with disabilities.

(j) If the vehicle is interfering with the use of a ramp or a curb-cut by persons with disabilities.

(k) If the vehicle has been involved in a traffic crash and cannot be safely operated from the scene of the crash. [Emphasis added.[7]]

It is true that "making public policy is the province of the Legislature, not the courts," *Myers v City of Portage*, 304 Mich App 637, 644; 848 NW2d 200 (2014), and under separation-of-powers principles, judges are precluded from supplanting the Legislature's policy judgments with their own personal preferences, see generally *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012). However, "it is a settled maxim that courts generally speak through their judgments and decrees, and not their oral statements," *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 387; 853 NW2d 421 (2014), and courts must speak through a written order when granting injunctive relief, see MCR 3.310(C) (listing the necessary contents of "[a]n order granting an injunction") (emphasis added). Although the trial court orally expressed its opinion that the WCSO and its agents *should* perform some sort of investigation before authorizing Nationwide to tow vehicles in plaintiff city, it did not actually *rule* that the WCSO was required to do so before authorizing the recovery of a vehicle under MCL 257.252d(1). Indeed, the trial court did not order nonparty WCSO to do (or refrain from doing) anything. Rather, the judgment appealed enjoins the conduct of Nationwide only, and it expressly provides: "Pursuant to MCR 3.310(C)(4), this Final Judgment is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Hence, we reject this claim of error. Nationwide cannot attribute to the trial court a ruling that was never made, then claim that ruling as error requiring reversal.

## D. STATUTORY AUTHORIZATION

Relying on selected portions of Restatement, § 821B, comment *f*,[8] defendants argue that because "[t]he Special Anti-Theft Laws, being MCL 257.252 *et seq.*, provide a comprehensive

---

[7] As explained further *infra*, in light of this provision's use of the phrase "reasonable cause," Nationwide's argument that it requires no "investigation" by the police is unpersuasive. Notably, MCL 257.252d(3) further provides:

A police agency that authorizes the removal of a vehicle under subsection (1) shall do all of the following:

(a) Check to determine if the vehicle has been reported stolen prior to authorizing the removal of the vehicle.

(b) Except for vehicles impounded under subsection (1)(d), (e), or (k), a police agency shall enter the vehicle into the law enforcement information network as abandoned not less than 7 days after authorizing the removal and follow the procedures set forth in section 252a.

[8] In pertinent part, Restatement, § 821B, comment *f*, provides:

Effect of compliance. Although it would be a nuisance at common law, conduct that is *fully* authorized by statute, ordinance or administrative regulation does not subject the actor *to tort liability*. Aside from the question of the validity

---

statutory framework under which towing companies and law enforcement agencies operate," and because the disputed towing practices were legislatively authorized under MCL 257.252d(1) in particular, the trial court erred by finding that those practices constituted a common-law public nuisance. We disagree.

It is true that legislative authorization may serve as an affirmative defense against a common-law nuisance claim. See, e.g., *Williamstown Twp v Sandalwood Ranch, LLC*, 325 Mich App 541, 548-549; 927 NW2d 262 (2018) (noting that, under proper circumstances, the Right to Farm Act, MCL 286.471 *et seq.*, serves as an affirmative defense against a municipality's claim that a "farm" or "farm operation" constitutes a common-law nuisance). In this instance, however, defendants failed to assert legislative authorization as an affirmative defense in their initial responsive pleading. Nor did they later seek to amend their affirmative defenses to include such a defense. Thus, we conclude that they waived this affirmative defense below. See MCR 2.111(F)(3); *Dell v Citizens Ins Co of America*, 312 Mich App 734, 753; 880 NW2d 280 (2015) ("The failure to raise an affirmative defense as required by the court rule constitutes a waiver of that affirmative defense.") (quotation marks and citation omitted).

In any event, defendants' instant argument is also unpersuasive on the merits. Defendants' argument is premised on their assertion that the disputed towing practices—including the towing

---

of the legislative enactment, there is the question of its interpretation. . . . In the case of negligence as a matter of law, the standard defined by a legislative enactment is normally a minimum standard, applicable to the ordinary situations contemplated by the legislation. Thus traveling at less than the speed limit may still be negligence if traffic conditions indicate that a lesser speed is required. (See § 288C). The same general principle applies to public nuisance. Consideration may appropriately be given, however, to the fact that acts were taken in reliance upon legislation, as when expensive screening processes are installed to reduce the level of pollution to a legislative maximum.

*In addition, if there has been established a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct, the courts are slow to declare an activity to be a public nuisance if it complies with the regulations.* Thus, at one time courts frequently engaged in "judicial zoning," or the determination of whether a particular land use was unsuitable to a locality and therefore unreasonable. Now that most cities have complete sets of zoning regulations and agencies to plan and administer them, the courts have shown an inclination to leave the problem of the appropriate location of certain types of activities, as distinguished from the way in which they are carried on, to the administrative agencies. The variety and complexity of a problem and of the interests involved and the feeling that the particular decision should be a part of an overall plan prepared with a knowledge of matters not presented to the court and of interests not represented before it, may also promote judicial restraint and a readiness to leave the question to an administrative agency if there is one capable of handling it appropriately. [Emphasis added.]

away of "stolen" and "suspected stolen" vehicles without any investigation—are fully authorized by MCL 257.252d(1), which provides, in relevant part:

> A police agency or a governmental agency designated by the police agency may provide for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last-titled owner of the vehicle in any of the following circumstances:
>
> * * *
>
> (d) If there is *reasonable cause* to believe that the vehicle or any part of the vehicle is stolen.
>
> (e) If the vehicle must be seized *to preserve evidence of a crime*, or if there is *reasonable cause* to believe that the vehicle was used in the commission of a crime.  [Emphasis added.]

The emphasized language directly undercuts defendants' position.  By requiring a finding of "reasonable cause" before vehicles are recovered as stolen or "suspected" stolen, MCL 257.252d(1) clearly contemplates investigatory efforts by the recovering police agency before such vehicles are recovered.  Without investigating, one cannot determine whether "reasonable cause" exists.  At trial, it was undisputed that Nationwide was routinely recovering vehicles in plaintiff city without *any* investigatory efforts on behalf of the authorizing police officer.  Thus, we cannot conclude that the disputed towing practices were "fully authorized" by statute as defendants contend, and we reject defendants' instant claim of error.

E.  SUBJECT-MATTER JURISDICTION

Defendants argue that the trial court lacked subject-matter jurisdiction over this matter.  Defendants also contend that the trial court erred by exercising its equitable "jurisdiction" in this case despite the availability of adequate statutory remedies.  We disagree in both respects.

At the outset, we address a question of issue preservation.  Plaintiff contends that defendants failed to duly preserve this issue below, thereby waiving it.  "However, it is well settled that a party may challenge the subject-matter jurisdiction of a court at any time, even for the first time on appeal." *McFerren v B & B Inv Group*, 233 Mich App 505, 512; 592 NW2d 782 (1999).  Moreover, to the extent that defendants argue that the trial court erred by exercising its equitable "jurisdiction," that issue regards the trial court's ultimate decision following a bench trial, and no exception need be taken below to preserve such a challenge.  MCR 2.517(A)(7); *Morris v Clawson Tank Co*, 459 Mich 256, 275 n 13; 587 NW2d 253 (1998).  Thus, this issue is preserved.

Conceptually speaking, subject-matter jurisdiction is a court's authority to exercise judicial power in a given *class* of cases. *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017).  In other words, whether subject-matter jurisdiction exists does not depend on the facts of the case or the evidence adduced at trial. *Id*.  Rather, whether a court has subject-matter jurisdiction over a given action is determined by reference to the allegations in the pleadings. *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 561; 840 NW2d 375 (2013).  "[W]here it is apparent from the allegations of a complaint that the matter alleged is within

-17-

the class of cases in which a particular court has been empowered to act, subject-matter jurisdiction is present." *Luscombe v Shedd's Food Prod Corp*, 212 Mich App 537, 541-542; 539 NW2d 210 (1995).

The circuit courts of this state are courts of general jurisdiction, with 'original jurisdiction to hear and determine all civil claims and remedies, except where *exclusive* jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.' MCL 600.605." *Winkler*, 500 Mich at 327 (emphasis added); see also Const 1963, art 6, § 1 ("the judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, *one trial court of general jurisdiction known as the circuit court*, one probate court, and courts of limited jurisdiction that the legislature may establish") (emphasis added).

Defendants rely on MCL 257.252e(1), which grants district and municipal courts "jurisdiction to determine if a police agency, towing agency or custodian, or private property owner has acted properly in reporting or processing a vehicle under section 252a, 252b(6) to (11), or 252d[.]" Defendants also rely on MCL 257.252e(4), which provides: "The remedies under sections 252 through 254 are the exclusive remedies for the disposition of abandoned vehicles."

However, MCL 257.252e makes no mention of nuisance or nuisance-abatement actions. Conversely, MCL 600.2940(1) provides: "All claims based on or to abate nuisance may be brought in the circuit court. The circuit court may grant injunctions to stay and prevent nuisance." By way of MCL 600.2940(1), "[t]he Legislature has conferred on the circuit courts broad equitable jurisdiction over nuisance-abatement proceedings, irrespective of the nature and extent of the particular alleged nuisance." *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 527 n 12; 730 NW2d 481 (2007). As the provision specifically regarding jurisdiction over nuisance-abatement actions as a class, MCL 600.2940(1) controls this jurisdictional question. See *Pike v Northern Mich Univ*, 327 Mich App 683, 693; 935 NW2d 86 (2019) ("it is a well-established rule of statutory construction that when two applicable statutory provisions conflict, the one that is more specific to the subject matter prevails over the provision that is only generally applicable"). The allegations in plaintiff's complaint clearly asserted claims seeking abatement of a public nuisance. Therefore, the circuit court had jurisdiction over the subject matter of this action under MCL 600.2940(1), and we reject defendants' argument to the contrary.

Defendants also argue that the trial court erred by exercising its equitable "jurisdiction" in this case. In large part, that argument—which relies on caselaw that predates our 1963 Constitution—is founded on the faulty premise that distinctions between legal and equitable (or "chancery") jurisdiction still exist. Defendants fail to recognize that "Michigan no longer has separate equity courts[.]" *Beason v Beason*, 435 Mich 791, 797, n 1; 460 NW2d 207 (1990), discussing Const 1963, Art VI, § 5 ("The distinctions between law and equity proceedings shall, as far as practicable, be abolished"). Accordingly, the proper inquiry here is not whether equitable "jurisdiction" was properly exercised. Rather, when framed properly, the question is whether the trial court erred by exercising its equitable injunctive powers to abate the nuisance.

Defendants contend that the existence of "full and adequate" legal remedies under the Special Anti-Theft Laws precluded equitable relief. They are correct that "legislative action that provides an adequate remedy by statute precludes equitable relief[.]" *Tkachik v Mandeville*, 487

Mich 38, 46; 790 NW2d 260 (2010). But for a remedy at law to be considered "adequate," it must be "complete and ample, and not doubtful and uncertain[.]" *Id*. (quotation marks and citation omitted). The remedy at law must also, "both in respect to its final relief and its modes of obtaining the relief, . . . be as effectual as the remedy which equity would confer under the circumstances[.]" *Id*. (quotation marks and citation omitted).

Defendants cite no authority indicating that plaintiff city would have been able to institute proceedings under the Special Anti-Theft Laws in the first instance, let alone to receive an adequate remedy at law under them. Those statutes provide for the recovery of certain relief by a recovered vehicle's owner or secured lienholder, not a municipality like plaintiff, see MCL 257.252f(1) (providing that petitions for review concerning recovered vehicles must be "signed by the owner of the vehicle that has been taken into custody, or, upon the filing of a petition prescribed in section 252a signed by the secured party"), and one such provision—MCL 257.252d(3)(b)—was recently held unenforceable as unconstitutionally depriving such parties of due process. *Brite Fin Servs, LLC v Bobby's Towing Serv, LLC*, 461 F Supp 3d 549, 560 (ED Mich, 2020). Moreover, we can conceive of no award of legal damages or any other remedy at law that would *adequately* address— and prevent—the public nuisance posed by the disputed towing practices. Consequently, the trial court did not err by granting equitable relief in the form of an injunction here. See *Detroit v Village of Highland Park*, 186 Mich 166, 182; 152 NW 1002 (1915) ("Of the transcendent power in an equity court, under its general jurisdiction, to restrain and abate a continuing public nuisance for which, by reason of its extent and nature, there is no plain and adequate legal remedy there can be no question.").

## F. COST AND FEES UNDER MCR 2.504(D)

Defendants argue that the trial court erred by denying their motion for costs and fees under MCR 2.504(D) related to defending, respectively, against plaintiff's counterclaim and third-party claim for public nuisance in the prior federal action. Assuming, without deciding, that the dismissed federal claims qualify as a dismissed "action" for purposes of MCR 2.504(D)—despite the fact that they were not the *only* claims at issue in the federal action[9]—we are nevertheless unpersuaded.

For purposes of MCR 2.504(D), if the work product from the dismissed action "is usable in the subsequent action," the plaintiff need not be required to pay the defendant's costs and fees. *Sirrey v Danou*, 212 Mich App 159, 161; 537 NW2d 231 (1995); accord *McKelvie*, 193 Mich App at 85. In this instance, the trial court expressly relied on *Sirrey* and *McKelvie*, denying defendants' motion for costs and fees on the basis of its finding that their work product concerning the dismissed public-nuisance claims in the federal action was usable in this subsequent action. Defendants do not argue that the trial court clearly erred by so finding. Nor have defendants

---

[9] See *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 555; 640 NW2d 256 (2002) (construing the terms "claim" and "action," as used in former MCR 2.403(M)(1), and holding that, "according to the plain meaning of these words, a claim consists of facts giving rise to a right asserted in a judicial proceeding," whereas the "action" is the "judicial proceeding" itself, encompassing *all* of the claims involved in the action); but see MCR 2.504(C) ("This rule applies to the dismissal of a counterclaim, cross-claim, or third-party claim.").

presented any record evidence tending to suggest that the trial court's relevant finding is clearly erroneous. Indeed, in the trial court, defendants' attorney admitted that he *had* used discovery materials obtained in the prior federal action to support a motion for summary disposition filed in this action. Consequently, there is no basis to disturb the trial court's relevant factual finding here, and we cannot conclude that the trial court abused its discretion by denying defendants' motion for costs and fees under MCR 2.504(D). On the contrary, because that ruling is firmly supported by *Sirrey*, 212 Mich App at 161, and *McKelvie*, 193 Mich App at 85, the result reached below fell squarely within the range of principled outcomes.

## G. SANCTIONS

After plaintiff's claims against defendant Metrotech were dismissed with prejudice at the stipulation of the parties, Metrotech filed a motion seeking sanctions against plaintiff, arguing that plaintiff's claims against it were frivolous, pursued for improper purposes, and asserted without a reasonable inquiry in the factual basis underlying those claims or any reasonable basis to believe that the allegations in plaintiff's complaint concerning Metrotech were true. On appeal, Metrotech argues that the trial court abused its discretion by denying that motion. We disagree.

"Michigan courts follow the American Rule with respect to the payment of attorney fees and costs," under which "each party is responsible for his or her own attorney fees unless a statute or court rule specifically authorizes the trial court to order an award of attorney fees." *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015). The party seeking costs and attorney fees has the burden of proving its entitlement to them. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 555 n 22; 886 NW2d 113 (2016).

In support of its motion for sanctions, Metrotech relied on MCL 600.2591 and MCR 1.109(E). In pertinent part, MCL 600.2591 provides:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.
>
> * * *
>
> (3) As used in this section:
>
> (a) "Frivolous" means that at least 1 of the following conditions is met:
>
> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit.

-20-

(b) "Prevailing party" means a party who wins on the entire record.

MCR 1.109(E) provides, in relevant part:

(2) Requirement.  Every document filed shall be signed by the person filing it or by at least one attorney of record.  A party who is not represented by an attorney must sign the document. . . .

* * *

(5) Effect of signature.  The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

(a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) Sanctions for Violation.  If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees.  The court may not assess punitive damages.

(7) Sanctions for Frivolous Claims and Defenses.  In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2).[10]  The court may not assess punitive damages.

As this Court explained in *Meisner Law Group, PC*, 321 Mich App at 731-732:

The frivolous-claim-or-defense provisions of the Michigan Court Rules and MCL 600.2591 impose an affirmative duty on each attorney to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed.  The reasonableness of the attorney's inquiry is determined by an objective standard, not the attorney's subjective good.  The purpose of imposing sanctions for asserting a

---

[10] MCR 2.625(A)(2) incorporates MCL 600.2591 by reference, providing:

Frivolous Claims and Defenses.  In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591.

frivolous action or defense is to deter parties and their attorneys from filing documents or asserting claims or defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose. A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted. [Quotation marks and citations omitted.]

Assuming, without deciding, that Metrotech qualifies as a "prevailing party" here for purposes of MCL 600.2591—despite the fact that the claims against it were dismissed with prejudice via a *stipulated* order that did not reserve the issue of costs and attorney fees—we are nevertheless unpersuaded that the trial court abused its discretion by denying Metrotech's motion for sanctions. In opposing that motion, plaintiff presented an affidavit from one of its attorneys indicating that plaintiff's claims against Metrotech had been premised on evidence in the possession of a nonparty insurance company ("Esurance"); that Esurance had initially offered to share such evidence with plaintiff; that Esurance had also offered to permit plaintiff to use its expert witnesses in this action; that Esurance's new legal counsel withdrew those offers after plaintiff had initiated this action; that plaintiff nevertheless attempted to subpoena the relevant evidence from Esurance; and that plaintiff had only agreed to the dismissal of its claims against Metrotech after Esurance objected to that subpoena on grounds that it requested the production of privileged attorney work product.

The trial court evidently credited plaintiff's attorney's representations in those regards, and we perceive no basis to disturb that tacit credibility judgment on appeal, particularly in light of the attorney's willingness to offer a sworn affidavit and his duty of candor toward the tribunal. See *People v Dunbar*, 463 Mich 606, 617, n 13; 625 NW2d 1 (2001) (holding that, in light of the duty of candor, "in the absence of evidence to the contrary, we will accept a licensed attorney's assertion to a court"). Moreover, accepting plaintiff's attorney's representations as true, we cannot conclude that the trial court clearly erred by finding that Metrotech had failed to carry its burden of demonstrating that the claims against it in this action were "frivolous" for purposes of MCL 600.2591 and MCR 1.109(E)(7) or that plaintiff's complaint was signed without a proper inquiry (or for improper purposes) under MCR 1.109(E)(5). Because the trial court's findings in those regards were squarely supported by record evidence, we will not disturb them on appeal.

## H. MOTIONS FOR A NEW TRIAL AND STAY PENDING APPEAL

Under the heading of a single question presented, defendants actually raise two distinct claims of error. First, they contend that the trial court abused its discretion by denying their motion for a new trial under various subparts of MCR 2.611(A)(1). Although defendants do cite *some* authority in support of that argument—namely, MCR 2.611(A)(1) and caselaw setting forth the applicable standard of review—they fail to perform any substantive analysis (i.e., *application* of the law to the facts). Rather, they simply beg the question, arguing: "For the reasons stated in arguments A-D, *supra*, the trial court erred in denying Nationwide's request for a new trial." In light of such cursory treatment, we deem the issue abandoned and decline to address it on the merits. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority."); *MOSES Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006) ("If a party fails to adequately brief a position, . . . it is abandoned."); *Phillips v Deihm*, 213

Mich App 389, 401; 541 NW2d 566 (1995) ("This Court will not search for authority to sustain or reject a party's position").

Defendants also argue that the trial court abused its discretion by denying Nationwide's motion to stay the injunction against it (or modify that injunction to permit certain enjoined towing practices) pending the instant appeal. This Court has already denied defendants' appellate motion to stay the injunction pending appeal. *Detroit v Nationwide Recovery Inc*, unpublished order of the Court of Appeals, entered August 22, 2019 (Docket No. 348814). Moreover, in light of the current procedural stance of this case, it is a moot question whether the trial court abused its discretion by denying defendants' motion to stay or modify the injunction pending appeal. See *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016) (observing that "[a] matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy" or "it impossible for the appellate court to fashion a remedy") (quotation marks and citation omitted). Even assuming, arguendo, that the trial court *did* abuse its discretion by denying the motion to stay, a ruling to that effect would have no practical legal effect at this time; it is no longer possible to stay or modify the injunction *pending* this appeal. Thus, we decline to decide this moot question.

## I. EXPEDITED HEARING

Finally, defendants argue that the trial court erred by denying Nationwide's demand for trial on seven days' notice under MCR 3.601(B) ("a party other than a defendant in default may notice the action for hearing on 7 days' notice) and (D) ("On the day noticed for hearing, the court shall hear and determine the disputed issues and enter a proper order and judgment."). We hold that defendants waived this issue below.

"Generally, an issue is not properly preserved if it is not raised before, and addressed and decided by, the trial court." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Defendants raised this issue below by filing a motion to set this case for hearing on June 12, 2018, and a praecipe to that effect. However, on this record, it is unclear whether the trial court ever actually addressed or decided that motion. See *Arbor Farms, LLC*, 305 Mich App at 387 ("it is a settled maxim that courts generally speak through their judgments and decrees, and not their oral statements"). Defendants admit that no hearing on the record ever occurred; rather, the trial court discussed the matter with the parties during a June 7, 2018 teleconference that was not recorded or transcribed. Thereafter, the trial court entered a scheduling order setting dates in September 2018 for the close of discovery and a pretrial settlement conference. That scheduling order did not address or decide defendants' motion to set this matter for hearing, and the trial court never entered any order doing so. In addition, after the scheduling order was entered, defendants filed a notice withdrawing their "Amended Notice/Demand for Hearing filed on June 4, 2018," which did not expressly mention their motion to set this case for hearing. Nor did defendants subsequently take any steps to obtain a written order ruling on that motion.

By failing to make any record of the trial court's disputed ruling in the trial court, defendants failed to duly preserve this issue for appellate review. See *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 737; 832 NW2d 401 (2013); accord *Hull & Smith Horse Vans, Inc v Carras*, 144 Mich App 712, 721; 376 NW2d 392 (1985) ("[O]ne purpose of a hearing in the trial court is to make a record so that the case can be reviewed by an appellate

court."). As a general rule, failure to duly preserve an issue in a civil matter "waives review of that issue on appeal." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (quotation marks and citation omitted).

Moreover, although this Court has discretion to "overlook preservation requirements" in certain circumstances, see *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006), it would be futile to do so here. Appellants bear "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal [i]s predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000), citing *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993). Additionally, "[t]his Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Absent either "a stipulated record" or a record setting forth both the trial court's disputed ruling and any reasoning stated in support, proper appellate review is generally impossible. *Kailimai v Firestone Tire & Rubber Co*, 398 Mich 230, 233; 247 NW2d 295 (1976) ("The Court of Appeals cannot decide this question without benefit of the lower court file and transcripts or a stipulated record.").

In sum, on this record, we cannot determine what the parties argued, whether the trial court ruled, how it ruled, or why it did so. As a result, proper appellate review is not practicable. See *Kailimai*, 398 Mich at 233. Because defendants have failed to provide this Court with the necessary record to verify their instant claim of error, we deem it waived. See *Walters*, 481 Mich at 387; *Elston*, 462 Mich at 762.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan